IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| SLICE OF LIFE, LLC AND VAL KLEYMAN, | : | No. 7 MAP 2018 |
| | : | |
| | : | Appeal from the Order of |
| Appellees | : | Commonwealth Court at No. 941 CD |
| | : | 2016 dated June 21, 2017, |
| | : | Reconsideration Denied August 7, |
| v. | : | 2017, Reversing the Order dated April |
| | : | 20, 2016 of the Monroe County Court |
| | : | of Common Pleas, Civil Division, at |
| HAMILTON TOWNSHIP ZONING | : | No. 4642 CV 2015 |
| HEARING BOARD AND HAMILTON | : | |
| TOWNSHIP, | : | ARGUED:  December 5, 2018 |
| | : | |
| Appellants | : | |

<u>OPINION</u>

**JUSTICE DONOHUE**  **DECIDED:  April 26, 2019**

In this discretionary appeal, we must determine whether a zoning ordinance that defines "family" as requiring "a single housekeeping unit" permits the purely transient use of a property located in a residential zoning district.  This question arises based on the increasingly popular concept of web-based rentals of single-family homes to vacationers and other transient users for a few days at a time.  *See* 5 Rathkopf's The Law of Zoning and Planning § 81:11 (4th ed.) (2018).  For the reasons that follow, we conclude that pursuant to this Court's prior decisions in *Albert v. Zoning Hearing Bd. of N. Abington Twp.*, 854 A.2d 401 (Pa. 2004), and *In re Appeal of Miller*, 515 A.2d 904 (Pa. 1986) ("*Miller*"), the purely transient use of a house is not a permitted use in a residential zoning

district limiting use to single-family homes by "a single housekeeping unit." We therefore reverse the decision of the Commonwealth Court and reinstate the decision of the zoning hearing board, as affirmed by the common pleas court.

To properly frame the matter before us, some background regarding the underlying law is useful. A property owner has a constitutionally protected right to the enjoyment of his or her property. Pa. Const. art. I, § 1 (providing for the "inherent" right of "acquiring, possessing and protecting property"); *Newtown Square E., L.P. v. Twp. of Newtown*, 101 A.3d 37, 51 (Pa. 2014). That right is permissibly limited by a zoning ordinance that is substantially related to the protection of the public health, safety, morality and welfare – commonly known as a municipality's "police power." *In re Realen Valley Forge Greenes Assoc.*, 838 A.2d 718, 728 (Pa. 2003) (quoting *C & M Developers, Inc. v. Bedminster Twp. Zoning Hearing Bd.*, 820 A.2d 143, 150 (Pa. 2002)).

The establishment of residential zoning districts has long been recognized as a valid exercise of a municipality's police power. They serve to insulate areas intended for residential living from increased noise and traffic, protect children living there and their ability to utilize quiet, open spaces for play, and to maintain "the residential character of the neighborhood." *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 394 (1926). Non-family uses, including fraternity houses and boarding houses, have been found to be antithetical to the "residential character," as "[m]ore people occupy a given space; more cars … continuously pass by; more cars are parked; [and] noise travels with crowds." *Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 9 (1974). As the high Court explained,

> A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one within *Berman v. Parker*, [348 U.S. 26 (1954) (discussing

the broad concept of public welfare)]. The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

*Id.*

"Single housekeeping unit" is a phrase that is commonly used in the definition of "family" in zoning ordinances throughout the country. *See* Patricia E. Salkin, *Family defined; unrelated persons*, 1 Am. Law. Zoning § 9:30 (5th ed.); *see, e.g., Vill. of Belle Terre*, 416 U.S. at 2. It finds its roots in the beginnings of zoning once "the legitimacy of exclusive single-family districts was settled." *Miller*, 515 A.2d at 906. Early zoning ordinances, however, generally failed to define the term "family," requiring the judiciary to provide its meaning. *Id.* "[D]issatisfaction with reliance solely upon judicial interpretation for the definition of the term 'family' became increasingly apparent," prompting the drafters of zoning ordinances across the United States to include a definition within the ordinances themselves. *Id.* at 907. Based on the use of the phrase "single housekeeping unit" by leading commentators on zoning, ordinances began to use that language to define the term "family." *Id.* (citing E. Bassett, *Zoning* at 189 (1940)).

Unfortunately, this did not achieve the desired result, as it served only to shift the focus of litigation relating to permissible uses in residential zoning districts from defining the word "family" to defining the phrase "single housekeeping unit." *Id.* In defining "single housekeeping unit," courts adopted a definition that required the occupants of a home to live and behave in a manner like that of a family in a character that is "permanent … and not transitory." *Washington Twp. v. Central Bergen Comm. Mental Health Ctr.*, 383 A.2d 1194, 1209 (N.J. Sup. 1978). *See Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494,

515-19 (1977) (Stevens, J., concurring) (recognizing that state decisions regarding residential zoning ordinances generally require, inter alia, "that a single-family home be occupied only by a 'single housekeeping unit,'" and for "such households to remain nontransient"); *see, e.g., Northern Maine General Hosp. v. Ricker*, 572 A.2d 479 (Maine 1990); *Commonwealth v. Jaffe*, 494 N.E.2d 1342 (Mass. 1986); *Costley v. Caromin House, Inc.*, 313 N.W.2d 21 (Minn. 1981); *State ex rel. Region II Child and Family Services, Inc. v. District Court of Eighth Judicial Dist.*, 609 P.2d 245 (Mont. 1980); *Crowley v. Knapp*, 288 N.W.2d 815 (Wis. 1980); *City of White Plains v. Ferraioli*, 313 N.E.2d 756 (N.Y. 1974).

*Miller* was one such case. It involved a homeowner who began providing lodging, meals and care to physically and mentally disabled persons in her home. The home was located in a residential zoning district that permitted single-family detached dwelling use, but disallowed convalescent homes, nursing homes and boarding houses. *Miller*, 515 A.2d at 905. The zoning ordinance at issue defined "family" as "any number of persons living and cooking together as a single housekeeping unit." *Id.* at 905. To determine whether the given use was permitted under the ordinance, this Court had to discern the definition of "single housekeeping unit," which was at the heart of the definition of "family." *Id.* at 906.

Examining cases from other jurisdictions, the *Miller* Court found that the focus was properly "on whether the unit functioned as a family unit, rather than on the respective relationships that existed between the members of the unit." *Id.* at 907 (citing *City of Syracuse v. Snow*, 123 Misc. 568 (N.Y. Sup. Ct. 1924); *Robertson v. Western Baptist Hospital*, 267 S.W.2d 395 (Ky. Ct. App. 1954); *Boston-Edison Protective Ass'n v. Paulist*

*Fathers*, 10 N.W.2d 847 (Mich. 1943)). We agreed that whether the individuals living in the home were in fact related to each other was not dispositive of whether they were a "single housekeeping unit," and thus a "family." Instead, the Court stated that the analysis required was a "functional analysis" to determine whether the use of the residence was that of a family, citing cases from the Commonwealth Court that adhered to this principle. *Id.* at 907-08 (citing *Children's Aid Society v. Zoning Bd. of Adjustment*, 402 A.2d 1162 (Pa. Commw. 1979) (use of a single family dwelling by a family with six foster children was a "family" even though not related "by blood, marriage or adoption" as required by the ordinance, as it was the functional equivalent of a "family"); *Wengert v. Zoning Hearing Bd. of Upper Merion Twp.*, 414 A.2d 148 (Pa. Commw. 1980) (group home for foster children not permitted in residential district, as use was the functional equivalent of an institutional corrective setting, not a family dwelling)).

Applying this "functional analysis" to the circumstances of the case before it, the Court in *Miller* observed that the individuals in question lived and cooked together; the activities and areas of the house were shared by everyone; all occupants had access to the entire house, including the single kitchen; meals were eaten together; and the group celebrated holidays together and attended social and religious functions together. *Id.* at 908. Further, the Court found that the use was not "transient," as "the residents usually remain substantial periods of time and move only for health reasons or personal preference."[1] *Id.* at 909. We therefore held that the use was permitted in the residential zoning district.

---

[1] The *Miller* Court, however, stated that while the transiency of the tenancy is a relevant consideration, its focus was "directed to the quality of the relationship during the period of residency rather than its duration." *Miller*, 515 A.2d at 909.

Nearly twenty years later, we decided *Albert*. We were faced with the question of whether the operation of a halfway house for recovering alcoholics and drug addicts was the functional equivalent of a single-family detached dwelling, a permitted use in the residential zoning district where the house was located. *Albert*, 854 A.2d at 402. The zoning ordinance in question did not define "family," and the Court therefore had to determine its meaning. *Id.* at 404. Observing that *Miller*'s definition of "single housekeeping unit" ultimately interpreted what it meant to be a "family," the *Albert* Court used that same analysis as the foundation for its decision. *Id.* at 405. In fact, we concluded in *Albert* that "single housekeeping unit" was a term of art, widely used in zoning ordinances as the "essential element" of what constitutes a "family" for purposes of zoning. *Id.* at 407 n.5 (citing Kenneth H. Young, 2 Anderson's American Law of Zoning § 9:30 (4th ed. 1996)). "The prevalence of this construction, in combination with the principle that zoning ordinances should be liberally construed to permit the broadest possible use of land, 53 P.S. § 10603.1, makes it apparent that 'single housekeeping unit' must be considered the plain and ordinary meaning of 'family' in the zoning context." *Id.*

The *Albert* Court ultimately found that the halfway house use was not the functional equivalent of a single-family detached dwelling because of "the transience of its residents." *Id.* at 407.

> While this Court has never before explicitly stated that transiency is incompatible with the notion of a single-family household, it is undeniable that inherent in the concept of "family" and, in turn, in the concept of a "single-family dwelling," is a certain expectation of relative stability and permanence in the composition of the familial unit.

*Id.* at 409. We explained that the very benefit of and purpose behind the creation of residential zoning districts was to "create residential neighborhoods in which the residents

may develop a sense of community and a shared commitment to the common good of that community." *Id.* In the absence of "stability and permanence" of the individuals residing in those districts, "the goal is necessarily subverted." *Id.* (citing 2 Rathkopf's The Law of Zoning and Planning § 23.27).

Thus, we held that a "single housekeeping unit," as that term of art is used and understood, requires that "a group of individuals in a single household must not only function as a family within that household, but in addition, the composition of the group must be **sufficiently stable and permanent so as not to be fairly characterized as purely transient.**" *Id.* at 410 (emphasis added). Finding that the average stay of residents was only two to six months, the Court concluded that such a "level of instability and transience is simply incompatible with the single-family concept." *Id.*

Turning to the facts of the case at bar, the property at the center of this controversy is a house located in the Poconos in Hamilton Township, Monroe County, Pennsylvania (the "Property") and its use is governed by the 1985 Hamilton Township Zoning Ordinance (the "Ordinance"). The Ordinance divides the township into zoning districts, and those districts into classes of districts. *See* Ordinance, § 302. The Property is located in Zoning District A, which provides for several permitted uses, the only relevant of which is "Use Class 1 - Single Family Residential," where "[p]ermitted uses include: [s]ingle family detached dwellings [and a]ccessory uses and essential services." *Id.*, § 402.1.[2] Section 201.4 defines a "dwelling" as "[a] building or structure designed, arranged, intended, or

---

[2] Other permitted uses in Zoning District A include conservation and agricultural uses. *See* Ordinance, Schedule I. It also allows planned residential developments and correctional institutions as conditional uses, as well as conversions, related residential use and appropriate public uses as special uses. *Id.*

used as the living quarters for one or more families living independently of each other upon the premises. The term 'dwelling' shall not be construed to included hotel, motel, rooming houses, or other tourist home." *Id.,* § 201.4. A "one-family" dwelling is "[a] building on a lot, designed, arranged or intended for and occupied exclusively as a residence for one (1) family." *Id.*, § 201.4(a).

The Ordinance defines hotel and motel, but does not define "rooming house" or "tourist home."[3] It further defines "family" as "[o]ne or more persons, occupying a dwelling unit, related by blood, marriage, or adoption, living together as a single housekeeping unit and using cooking facilities and certain rooms in common." *Id.*, § 204.1. The Ordinance does not separately define the phrase "single housekeeping unit."

At all times relevant to the pending matter, the Property was owned by Appellee Slice of Life, LLC ("Slice of Life"), a limited liability corporation formed, organized and existing under the laws of Pennsylvania. Appellee Val Kleyman ("Kleyman" and together with Slice of Life, "Appellees") is the sole member of Slice of Life. Kleyman, who lives in Brooklyn, New York, has never lived at the Property or considered it to be his personal residence. Rather, Slice of Life purchased the Property as an investment property that was to be used exclusively for short-term rentals.

---

[3] The Ordinance defines "hotel" as "[a] building designed or used primarily as a temporary abiding place in which lodging is provided for compensation, with or without meals, containing ten (10) or more guest rooms, and having an outside entrance in common." *Id.*, § 204.1. A "motel" is defined as "[a] building or group of buildings containing individual rooms or apartment accommodations primarily for transients, each of which is provided with a separate exterior entrance and a parking space, offered principally for rental and use by motor vehicle travelers. The term 'motel' includes but is not limited to auto courts motor courts, motor inns, motor lodges or roadside hotels." *Id.* Although "tourist home" and "boarding house" are not defined, Appellants have never contended (and do not now contend), and none of the reviewing bodies below found, that the Property constituted or was being used as either.

On May 22, 2014, a Hamilton Township zoning officer issued an enforcement notice to Appellees based upon Appellees' use of the Property "as [a] Hotel and/or other types of transient lodging, Rental of Single Family Residential Dwelling for transient tenancies," in violation of the permitted uses for Zoning District A. Township's Exhibit 1 (Enforcement Notice). The notice instructed Appellees that they must "Cease Use as a hotel/transient rental facility" by May 31, 2014. *Id.*

Appellees' filed an appeal to the Hamilton Township Zoning Hearing Board (the "Board"). The Board convened hearings on the appeal that took place on seven separate days spanning ten months. Kleyman testified that he is a real estate investor, estimating that he owned between ten and twelve properties at the time of the hearing, more than one of which is located in the Poconos. N.T., 11/12/2014, at 243, 291-92. He stated that he created Slice of Life for the purpose of purchasing the Property. Kleyman advertised the Property online for short-term rentals – a minimum of two nights and a maximum of one week – through companies that specialize in internet-based rentals including Home Away and Luxury Stay, the latter of which he and his business partner, Oleg Gorshkov, formed in 2012 or 2013. Luxury Stay, which is based in New York, makes "reservations" and manages the Property (and others) through an informal agreement with Slice of Life. *Id.* at 243, 255.

Kleyman described the Property as a three-bedroom house that can sleep between twelve and fourteen people on a variety of beds and pullout couches that are located in various rooms throughout the house. *Id.* at 314. Evidence submitted at the hearing, however, revealed that the Property is advertised as a six-bedroom house that sleeps seventeen people. N.T., 12/9/2014, at 427. Although one person signs the lease,

it is expected and understood that large groups will utilize the Property, but neither Luxury Stay nor Slice of Life is aware of (or makes any effort to ascertain) the relationship, if any, between the individuals occupying the Property at any given time. N.T., 11/12/2014, at 261, 271, 308. Luxury Stay at times will verify that the person making the reservation is the minimum age for renting the Property (twenty-five), but collects no information regarding the additional people who will be staying there. *Id.* at 250, 268, 271. When guests arrive at the Property, they find a welcome book that identifies area businesses and instructions for using the amenities of the Property. *Id.* at 253.

After each group leaves the Property, Kleyman testified that a crew is dispatched to clean it within thirty-six hours, and that other "crews … run around … and fix everything that's broken." *Id.* at 254. He estimated that the Property is rented approximately twenty-five weekends per year. *Id.* at 315.

He admitted that he had received complaints from neighbors to the Property concerning noise – in particular, the use of fireworks at 2:00 a.m. by renters. *Id.* at 248. Leopold Zappler, the adjacent property owner, also testified to activities occurring on the Property that threaten the health, safety and welfare of his home and his family, including public urination, fireworks, loud music, large bonfires in the heavily wooded area, nudity and lewd conduct. N.T., 12/9/2014, at 412, 415-16, 418, 432-34, 441, 444; *see also* Zappler's Exhibit 5 (letters from Zappler to Kleyman concerning activities occurring at the Property). The record further reflects that neighbors had called the police to the Property for noise (fireworks and loud parties) on several occasions as well. *See* Zappler's Exhibit 4 (police reports). There was also the suggestion that the septic system, designed for

use by a single family in a three-bedroom house, could be inadequate to accommodate the number of people who routinely utilized the home. N.T., 11/12/2014, at 341.

Kleyman acknowledged that this is his business and that it is part of "the tourism industry" of the Poconos. *Id.* at 257. He further stated that he is required to pay Pennsylvania's Hotel Occupancy Tax on the Property. *Id.* at 269; *see* 72 P.S. § 7210. While Kleyman denied that the Property constituted a "hotel" or "transient boarding house" he agreed that the people who rented the Property fit the dictionary definition of the term "transient," i.e., "passing through or by a place with only a brief stay or sojourn." N.T., 11/12/2014, at 255, 310.

On June 2, 2015, the Board issued its decision denying Appellees' appeal of the enforcement notice. The Board found, based on the evidence presented before it, that the Property was "part of a transient lodging business enterprise," used in a manner typical of a hotel or motel.

> The nature of the lodging business enterprise is that a new group of 12 to 14 persons occupy and utilize the [Property] on weekends frequently throughout the year. Although the [Property] is not continuously rented 52 weeks out of the year, there is a steady use of the [Property] by a new group of 12 to 14 new occupants throughout the calendar year just as there would be in a hotel, motel, or other place of transient lodging accommodations.

Board Decision, 6/2/2015, at 7. Relying on this Court's decision in *Albert*, the Board concluded that "the short term transient lodging rental business and use of the [Property] is the operation of a business in the Single Family Residential District contrary to the provisions of the Ordinance resulting in a purely transitory occupancy of the [Property]." *Id.* at 9-11.

Appellees' appealed the Board's decision to the Monroe County Court of Common Pleas (the "trial court"), which entertained argument but took no additional evidence. Appellees argued that because the Property does not satisfy the specific definition of "hotel" or "motel" as provided in the Ordinance, it therefore "must be a single family dwelling." Trial Court Opinion, 4/20/2016, at 4. They also argued that the Board's reliance on *Albert* was improper because in that case, this Court was required to define the term "family" in an ordinance that left the term undefined.

The trial court found that although "family" is defined in the Ordinance, *Albert* stands for the broad proposition that the term "family" in zoning-related matters requires a level of stability and permanency, and therefore was still applicable to Appellee's use of the Property. *Id.* at 4-5. The trial court further found that even in the absence of the applicability of *Albert*'s definition of family, Appellees' use of the Property is not permitted in Zoning District A under the Ordinance. Relying *Miller*, the trial court held that Appellees' "use of the Property is predicated entirely on a 'for profit' commercial enterprise," which is prohibited in the zoning district. Trial Court Opinion, 4/20/2016, at 6-7.[4]

---

[4] Appellees additionally raised two challenges to the Ordinance itself. First, Appellees argued that it was unconstitutionally vague and ambiguous because it did not expressly prohibit short-term rentals. Trial Court Opinion, 04/20/2016, at 7-9. Second, they asserted a de jure exclusion challenge, claiming that the ordinance completely excludes a legitimate use of single family dwellings. *Id.* at 9-11. The trial court found both of these claims to be meritless and unsupported by the record. Further, in their Pa.R.A.P. 1925(b) statement, Appellees raised a claim that the exclusion of short-term rentals constituted an unconstitutional taking, which the trial court found to be waived because the issue was not previously raised. Trial Court Opinion, 7/1/2016, at 15-16. No constitutional issues are presently before this Court, and we therefore do not discuss them further.

Appellees again appealed, this time to the Commonwealth Court, raising seven issues for review.[5] Of relevance to the pending matter, a majority of the three-judge Commonwealth Court panel agreed with Appellees that *Albert* was inapplicable, finding that its precedential value was limited to cases where the term "family" is not defined by a zoning ordinance. It proceeded to parse the testimony presented, finding that the evidence established that the individual who signed the lease of the Property was the "family" for purposes of the Ordinance, and the remaining people occupying the Property were mere "guests" of the "family." *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 164 A.3d 633, 638-39 (Pa. Commw. 2017).

It further found that because the phrases "transient lodging" and "transient tenancies" were neither used nor defined in the Ordinance, the Board could not modify the Ordinance to find that such uses were prohibited in the zoning district at issue. *Id.* at 641. "[T]he Board was required to apply the terms of the Ordinance as written, rather than deviating from those terms based on unexpressed policies of the Township regarding permitted uses. The Board's function is only to enforce the zoning ordinance in accordance with the law." *Id.* at 642 (emphasis omitted). Although highly critical of the

---

[5] The following issues were raised before the Commonwealth Court: (1) trial court error in holding that section 402.1 of the Ordinance does not allow "a short-term transient lodging enterprise" use; (2) trial court error in applying *Albert* where the Ordinance defined "family"; (3) trial court error in holding that there was "no substantial evidence" that the stated use of the Property is not permitted in the Single Family Residential district; (4) the Ordinance is unconstitutionally vague because it prohibits Appellees' use of the Property; (5) the Ordinance's exclusion of a single family dwelling for short-term rentals is unconstitutional; (6) the trial court erred by finding an identified, protected public interest at issue; and (7) the trial court's interpretation of the Ordinance constitutes "an unconstitutional taking of real estate" based on its failure to strictly construe the Ordinance to permit the widest use of land. *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 164 A.3d 633, 636 (Pa. Commw. 2017).

Board in this respect, the majority did not discuss the definition of "family" or specifically apply the definition to the facts of the case. Instead, believing that the Ordinance in question was ambiguous, but without stating precisely what that ambiguity was, the Commonwealth Court majority concluded that the law required it "to interpret the language of the Ordinance in favor of the landowner and against any implied extension of restrictions on the use of one's property," based on the requirement that courts strictly construe ambiguous ordinances to allow for the broadest use of land. *Id.*

In so holding, it relied on its prior decisions in *Shvekh v. Zoning Hearing Bd. of Stroud Twp.*, 154 A.3d 408 (Pa. Commw. 2017), and *Marchenko v. Zoning Hearing Bd. of Pocono Twp.*, 147 A.3d 947 (Pa. Commw. 2016), wherein the Commonwealth Court held that short-term rentals were permitted in the residential zoning districts in question because they were not specifically prohibited by the respective zoning ordinances. Though acknowledging that the facts of the case at bar differed from *Shvekh* and *Marchenko*, as the homeowners in those cases resided in the homes for at least part of the year when not being used as rental properties, it stated that "the controlling law [does] not." *Slice of Life*, 164 A.3d at 641.[6] "Enterprises such as AirBnB have expanded the

---

[6] As the Commonwealth Court concluded that a short-term rental use was permitted in Zoning District A, it further evaluated the complaints and concerns about the Property (including the high occupancy of the property, an inadequate septic system and disruptive tenants), concluding that they were speculative, and that the Board failed to satisfy its burden to show "a high degree of probability that [the alleged actions] will [substantially] affect the health and safety of the community" to preclude Appellees' use of the Property. *See id.* at 642, 644-45 (quoting *Appeal of O'Hara*, 131 A.2d 587, 598 (Pa. 1957) (finding the denial of a request for a special exception to allow for a school in a residential zoning district, which required board consent, was constitutional only if board found that the specific concerns regarding the proposed use have a substantial relationship with adverse impacts to "the health, safety and morals of the community")). As we conclude that short-term rentals are not a permitted use in Zoning District A, and this issue is not

possible uses of single-family dwellings and a township can address such uses in the zoning ordinance. Amendments, however, 'cannot be effected by shoe-horning a use that involves renting an entire single-family home to vacationers into the definition of 'tourist home.'" *Id.* at 642 (quoting, in part, *Marchenko*, 147 A.3d at 415).

Senior Judge Collins issued a brief dissenting opinion based on his conclusion that the record supported the trial court's affirmance of the Board's decision. "No doubt can exist that the intended meaning of the [O]rdinance was not to allow the [P]roperty to be used as a short-term rental unit for multiple families and/or individuals. Transient short-term rentals for multiple families or groups were not included within the drafters' intentions when restricting the zoning use to that of single-family properties." *Id.* at 646 (Collins, S.J., dissenting).

We granted the request for further review filed by the Board and the Township (collectively "Appellants") to answer the following question:

> Whether the Commonwealth Court disregarded the binding precedent of this Court, set forth in the case *Albert v. Zoning Hearing Board of North Abington Township*, 578 Pa. 439, 854 A.2d 401 (2004), by finding that the purely transient use of a property as part of a commercial short-term vacation rental business was a permitted use in a residential zoning district?

*Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 180 A.3d 367 (Pa. 2018) (per curiam).

Prior to addressing the issue before us, we must first decide whether this appeal should be allowed to proceed. On May 22, 2019, shortly after Appellees' brief was due to be filed in this Court, counsel for Appellees filed a motion to withdraw as counsel,

---

fairly encompassed in the question upon which we granted review, we need not evaluate this aspect of the Commonwealth Court's decision.

stating therein that Appellees' would not authorize their counsel to participate in the appeal before this Court. *See* Motion, 5/22/209, ¶ 1. This Court granted the motion on August 7, 2018. Order, 8/7/2018. Appellees therefore did not file a brief in this matter or participate in oral argument. In the same Order, the Court granted the request of Appellees' Amicus, Institute for Justice ("Amicus"), to participate in oral argument. *Id.*

Six months after the issuance of the Order, and two months after oral argument before this Court, Appellees filed a motion to quash the appeal based on the sale of the Property on July 17, 2018. Purporting to quote *Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513 (Pa. Commw. 2018), Appellees state, "Where a party no longer has an ownership interest in a property which is the subject of a land use appeal, that appeal becomes moot." Motion to Quash, 2/11/2018, ¶ 5. Appellants responded, disagreeing that the issue raised is moot and objecting to the requested relief.

We observe at the outset that the above-quoted language presented by Appellees does not appear in *Liberties Lofts*. Furthermore, the proposition for which it stands was simply raised as an argument in *Liberties Lofts* by the appellant and was not a holding of the case. *See Liberties Lofts*, 182 A.3d at 520, 523. Although other Commonwealth Court cases have held that the sale of the property at the heart of a land use matter renders the case moot, *see, e.g., Gwynedd Properties, Inc. v. Board of Sup'rs of Lower Gwynedd Tp.*, 635 A.2d 714 (Pa. Commw. 1993), this case is not subject to dismissal on mootness grounds.

The mootness doctrine is well settled:

> The cases presenting mootness problems involve litigants
> who clearly had standing to sue at the outset of the litigation.
> The problems arise from events occurring after the lawsuit has
> gotten under way—changes in the facts or in the law—which

allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that an actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed.

*Pap's A.M. v. City of Erie*, 812 A.2d 591, 599-600 (Pa. 2002) (quoting (*In re Gross*, 382 A.2d 116, 119 (Pa. 1978)).

In *Pap's A.M.*, this Court found that cessation of the complained of activity (fully nude erotic dancing), which violated a city ordinance, did not render the action challenging the ordinance moot. The Court found that although Pap's was no longer operating the business that was found to violate the ordinance, it remained a business incorporated in Pennsylvania and could open the same type of establishment in the future. *Id.* at 600. Further, we observed that the case presented the potential for manipulation, as the City of Erie "argued in favor of mootness at a point where the existing judgment, if left alone, would be to its benefit."[7] *Id.*

These same circumstances are present in the case at bar. While Appellees may have sold the Property, Slice of Life remains a Pennsylvania limited liability corporation and Kleyman, its sole member, is a real estate investor who owns other properties in Pennsylvania. Also as in *Pap's A.M.*, Appellees advocate for the discontinuance of the action on mootness grounds at a point where the dismissal of the case would benefit them, as there is an existing, precedential Commonwealth Court decision that permits short-term rentals in residential zoning districts in Pennsylvania. This potential

---

[7] *Pap's A.M.* was on remand to this Court from the United States Supreme Court, which had issued a plurality decision in favor of the City of Erie. *See Pap's A.M.*, 812 A.2d at 598-99.

manipulation motive for the discontinuance request is heightened because of Appellees' refusal to participate in the appeal before this Court.

The prevalence of short-term rentals in Pennsylvania (and throughout the country) has grown over the last several years, requiring cities, townships and boroughs to make case-by-case determinations as to whether and where such rentals should be permitted. *See* Thomas Marcey, *How Airbnb and its Online Kin Have Changed the Laws of Short-Term Renting – One State's Experience*, 2018-7 Construction Briefings NL 1 (July 2018); Katherine A. Janocsko, *Short-Term Rental, Long-Term Impact*, 20 No. 11 Lawyers J. 14 (2018). Further, given the significant amount of time that typically passes between a decision by a zoning hearing board and an appeal taken to this Court, the circumstances of this case are easily repeated, i.e., the property owner divests its interest therein following a decision in the property owner's favor. As the circumstances of this case are capable of repetition (by Appellees and others) but could easily evade review in this same manner, we will proceed to address the merits of the claim raised. *See Burke ex rel. Burke v. Independence Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014) (discussing exceptions to the mootness doctrine); *Pap's A.M.* 812 at 600-01.

Appellants argue that *Albert*, which is derived from our decision in *Miller*, is controlling. According to Appellants, through its decision in this case, as well as those in *Marchenko* and *Shvenk*, the Commonwealth Court has "ignored and eroded the lessons found in *Albert*," rendering that decision "virtually meaningless in Pennsylvania." Appellants' Brief at 16-21. They assert that the facts of this case clearly establish a purely transient use of the Property, and that the character of Appellees' "business enterprise"

does not share any of the hallmarks of a single-family residential district as described in *Albert* and *Village Belle Terre*. *See id.* at 13-14, 22-23.

Appellants further contend that the Commonwealth Court erred by finding the Ordinance to be ambiguous. Contrary to the repeated holdings of that court, Appellants state that because short-term rentals are not listed as a permitted use, that use is excluded, and there is no ambiguity.[8] *Id.* at 26-30.

Amicus discusses the history of property rights dating back to the Magna Carta for the proposition that any limitation on property rights must be strictly construed in favor of the free use of property. *See* Amicus' Brief at 5-10. Amicus asserts that "[a] long-standing requirement in strict-construction cases is that restrictions on property rights must be express or clearly implied." *Id.* at 11 (citing *Pearce v. Theological Seminary,* 2 Watts 340 (Pa. 1834)). Relying on our decision in *Peterson v. Zoning Bd. of Adjustment of Whitemarsh Twp.*, 195 A.2d 523 (Pa. 1963), wherein we held that a zoning ordinance's exclusion of a cement mixing plant from a zoning district did not extend to also exclude a concrete mixing plant, Amicus states that this means "restrictions must be explicit, or at least grounded in the actual text of the zoning ordinance, to have any affect." Amicus' Brief at 12-13. It further urges that restrictions must be interpreted to allow for the broadest possible use of land. *See id.* at 14-17.

---

[8] Appellants observe that the Commonwealth Court's decisions that post-date this appeal continue to be based on this same, erroneous legal basis – finding that uses not expressly prohibited in a zoning ordinance are necessarily permitted. Appellants' Brief at 21 n.2 (citing *Reihner v. City of Scranton Zoning Haring Bd.*, 176 A.3d 396 (Pa. Commw. 2018). *See also Hoefling v. Zoning Hearing Bd. of Monroe Twp.*, 1473 C.D. 2017, 2018 WL 5290348 (Pa. Commw. Oct. 25, 2018) (non-precedential decision).

Applying these principles to the Ordinance and the facts of the case, Amicus asserts that the Commonwealth Court correctly concluded that Appellees' use of the Property fell under the single-family dwelling permitted use in the Ordinance. *See id.* at 18-26. It further agrees with the Commonwealth Court's finding that *Albert* was inapplicable because the Ordinance defines "family" and *Albert* did not involve a "regressive restriction." *Id.* at 26-32. Amicus contends that the *Albert* and *Miller* decisions are inapplicable here because the "housekeeping units" to which the properties were being rented differed. According to Amicus, the groups in *Miller* and *Albert* were "malleable groups of unrelated individuals renting separate rooms in the same home," whereas here, Appellees rented the entire Property to a single person who alone constitutes the housekeeping unit. Amicus' Brief at 34.

The substantive question presented requires us to determine whether the exclusive use of the Property as a short-term rental unit is permitted by the Ordinance in Zoning District A as a Single Family Residential use. To evaluate this claim, we must interpret the language of the Ordinance. This presents a question of law for which our standard of review is de novo and our scope of review is plenary. *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018). We are bound by the facts as found by the Board that are supported by substantial evidence, which we have defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 642 (Pa. 1983)).

As stated hereinabove, Article I, Section 1 of the Pennsylvania Constitution protects a citizen's right to the private enjoyment of his or her property. Pa. Const. art. I,

§ 1. Although zoning ordinances may reasonably limit this right, they are in derogation of a person's property rights, and thus must be strictly construed. *Newtown Square E., L.P.*, 101 A.3d at 51; 1 Pa.C.S. § 1928(b)(8). In determining the extent of a restriction in a zoning ordinance upon the use of land, "the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction." 53 P.S. § 10603.1.[9]

While the Statutory Construction Act[10] does not specifically apply to our construction of zoning ordinances, we have nonetheless applied these principles in our interpretive decisions. *Tronjacki v. Bd. of Supervisors Solebury Twp.*, 842 A.2d 503, 509 (Pa. 2004). Thus, undefined words and phrases that appear in a zoning ordinance are to be given their "plain and ordinary meaning." *Southco, Inc. v. Concord Twp.*, 713 A.2d 607, 609 (Pa. 1998); 1 Pa.C.S. § 1903(a). Where a word or phrase in a zoning ordinance is defined, a court is bound by the definition. *Hughes v. Sch. Dist. of Pgh.*, 108 a.2d 698, 699 (Pa. 1954).

The zoning district in question permits, in relevant part, single-family detached dwellings. Ordinance, § 302. A "dwelling" is a building or structure to be used as "living quarters for one or more families," but does not include "hotel, motel, rooming houses or other tourist home." *Id.*, § 201.4. "Family" is defined in the Ordinance as "[o]ne or more persons, occupying a dwelling unit, related by blood, marriage, or adoption, living together as a single housekeeping unit and using cooking facilities and certain rooms in common."

---

[9] Act of Dec. 21, 1988, P.L. 1329, No. 170, § 48.

[10] 1 Pa.C.S. §§ 1501-1991.

*Id.*, § 204.1. While "single housekeeping unit" is undefined in the Ordinance, as we have already discussed at length, "single housekeeping unit" is a term of art that is widely used in zoning ordinances. This Court has adopted the common definition of "single housekeeping unit," used by courts throughout the country, as requiring the person or persons residing in the home to function as a family and to be "sufficiently stable and permanent" and not "purely transient." *Albert*, 854 A.2d at 409-10; *Miller*, 515 A.2d at 907-09. Thus, by defining "family" by requiring "a single housekeeping unit," the Ordinance clearly and unambiguously excluded, in pertinent part, purely transient uses of property in Zoning District A.

This is entirely consistent with the long-recognized goals of creating a residential zoning district. *See Vill. of Belle Terre*, 416 U.S. at 9; *Vill. of Euclid*, 272 U.S. at 388; *Albert*, 854 A.2d at 409. As a California appellate court observed, short-term rentals of homes located in a single-family residential zoning district "undoubtedly affect the essential character of a neighborhood and the stability of a community." *Ewing v. City of Carmel-By-The-Sea*, Cal. Rptr. 382, 388 (6th Dist. 1991).

> Short-term tenants have little interest in public agencies or in the welfare of the citizenry. They do not participate in local government, coach little league, or join the hospital guild. They do not lead a Scout troop, volunteer at the library, or keep an eye on an elderly neighbor. Literally, they are here today and gone tomorrow—without engaging in the sort of activities that weld and strengthen a community.

*Id.* The permanence and stability of people living in single-family residential zoning districts creates a sense of community, cultivates and fosters relationships, and provides an overall quality of a place where people are invested and engaged in their neighborhood and care about each other. This is a place where children can play together, neighbors

can know each other and look out for one another, and people can enjoy the "quiet seclusion" of their homes. *Vill. of Belle Terre*, 416 U.S. at 9; *Albert*, 854 A.2d at 409.

In the case at bar, the Commonwealth Court failed to discuss, let alone interpret, the definition of "family" as defined in the Ordinance or its requirement of "a single housekeeping unit." Indeed, it ignored entirely our decision in *Miller* and distinguished our decision in *Albert* without any discussion or analysis. Instead, it relied on its own factually inapposite and legally inaccurate decisions in *Marchenko* and *Shvek*.

In *Marchenko*, the owner of a single-family dwelling in a low-density R-1 residential district in Pocono Township, Monroe County, advertised on the Home Away website for short-term rentals to help cover her personal expenses. Marchenko lived in the house 62% of the time, and she rented the house the remaining 71 days of the year. While the home was rented, she stayed with a friend in New Jersey and kept her belongings in the home in a locked bedroom. The township zoning officer issued a notice describing Marchenko's use of the property as "vacation rentals," which did not constitute a "single-family detached dwelling" under the zoning ordinance. Although the township's ordinance included no reference to or definition of "vacation rentals," the zoning hearing board denied Marchenko's appeal. The trial court affirmed, stating that this Court's decision in *Albert* established a policy against transient uses in single-family-dwelling districts, thus barring the use in question in a single-family residential district.

Marchenko appealed to the Commonwealth Court, which reversed. That court started with the proposition that a zoning hearing board is charged with construing the language of a zoning ordinance as broadly as possible to give the landowner the benefit of the least restrictive use. The local zoning ordinance required occupancy exclusively

by one family, which it defined as "one or more persons, related by blood, adoption or marriage, living and cooking together in a dwelling unit as a single housekeeping unit," or, alternatively, as "a number of persons living and cooking together in a dwelling unit as a single housekeeping unit though not related by blood, adoption or marriage, provided that they live together in a manner similar to a traditional nuclear family." *Marchenko*, 147 A.3d at 950. The Commonwealth Court found that Marchenko constituted the only "family" using the residence,[11] and that she used the premises as her primary residence. Thus, the "family" was not "purely transient," as per the limitation in *Albert*, and the residence fit the ordinance's definition of a "single-family dwelling unit" ("a detached building designed for and occupied exclusively by one family"). *Id.* As here, the Commonwealth Court did not discuss the term of art "single housekeeping unit" used in the ordinance's definition of "family" or its plain meaning. Instead, it concluded that because the ordinance failed to bar short-term rental use under the definition of a "single-family dwelling unit," and because such use was not addressed by any other provisions,

---

[11] The *Marchenko* majority did not amplify on the "family" occupying the property during rental periods. In a dissenting opinion, Judge Pelligrini suggested that the majority's theory was that each successive group of renters constituted another "family" for purposes of compliance with the ordinance. *Id.* at 952 (Pelligrini, J., dissenting). According to Judge Pelligrini, "if the house was rented out every day of the year to a different group of renters, each of those groups would be a 'family.'" *Id.*

Judge Pelligrini disagreed that Marchenko's use met the ordinance's definition of "family." He stated that "no matter how much you stretch that definition of family to benefit Marchenko, it cannot be stretched to include renting to multiple parties for short-term stays." *Id.* Instead, relying on this Court's decision in *Albert*, and believing the majority's conclusion to be in conflict with *Albert*, Judge Pelligrini observed that short-term rentals create high levels of instability and transience and that the use was not permitted. *Id.* at 954.

the intermediate appellate court concluded that a broad interpretation of its language allowed the rentals. *Id.*

In *Shvekh*, a husband and wife purchased a single-family home located in a residential zoning district that permitted single-family dwellings but disallowed hotels, motels, resorts and other lodging services. The new house was intended to be used as the couple's primary residence. After they were unable to sell their old home, and subsequently separated, they instead decided to occupy the new house for approximately one week every month and to rent it out the remainder of the time, in partnership with the wife's mother. *Shvekh*, 154 A.3d at 410-11. They listed the house for rent on various short-term rental websites. Relying on this Court's *Albert* decision, the zoning hearing board found that the use was not permitted, as it was the functional equivalent of a hotel or tourist home, and not sufficiently stable and permanent to be considered a single-family residence. *Id.* at 411. The trial court affirmed this decision.

Shvekh appealed to the Commonwealth Court, which reversed. In so doing, the Commonwealth Court distinguished *Albert* on the basis that it involved a halfway house that was to be used in a "purely transient" manner, whereas the use in question was not because the owners occupied the house on a monthly basis.[12] *Id.* at 413. Further, the Commonwealth Court found significant that the use in *Albert* required a license and, "by contrast," renting a house to vacationers required no license of any sort. *Id.* While finding *Marchenko* to be factually distinguishable because the owners in *Shvekh* did not use the house as their primary residence, the *Shvekh* court nonetheless found *Marchenko* to be

---

[12] Notably, the definition of "family" in the ordinance involved in *Shvekh* did not include the "single housekeeping unit" term of art. *See Shvekh*, 154 A.3d at 412.

"controlling" as "the zoning ordinance did not prohibit the owner of a 'single-family dwelling' from renting it out." *Id.* at 413, 415.[13] According to the Commonwealth Court, "a municipality cannot advance a new and strained interpretation of its zoning ordinance in order to effect what it would like the ordinance to say without an amendment." *Id.* at 414.

In these decisions, the Commonwealth Court has improperly narrowed our decision in *Miller* to eliminate the "functional analysis" that we adopted and employed. The intermediate appellate court's requirement in *Marchenko* (applied both in *Shvekh* and in the case at bar) that any use not specifically prohibited will be deemed permitted is not only contrary to our above-discussed precedent, but also to our prior decision in *Silver v. Zoning Bd. of Adjustment*, 112 A.2d 84 (Pa. 1955), wherein we held that uses not expressly permitted in a zoning ordinance "are excluded by implication." *Id.* at 87. *See also Lex v. Zoning Hearing Bd. of Hampton Twp.*, 725 A.2d 236, 238 (Pa. 1999) (relying on *Silver* to find that a residential district that permitted the use of sheds on property did

---

[13] The *Shvekh* court also noted that the ordinance in question defined a "single-family dwelling" as "a detached building **designed for** or occupied exclusively by one family." *Id.* at 414 (emphasis supplied). It found that because the home was "designed for" a family, the use of the disjunctive rendered it irrelevant whether the home was in fact occupied by one. *Id.* This is an absurd and unreasonable interpretation. *See, cf., Northampton Area Sch. Dist. v. Zoning Hearing Bd. of Twp. of Lehigh*, 64 A.3d 1152, 1157 (Pa. Commw. 2013) (when interpreting a zoning ordinance, a court must presume the drafters did not intend a result that is absurd, unreasonable or impossible to execute); 1 Pa.C.S. 1922(1). Single-family homes generally are "designed for" use by a family but, as discussed infra, they can be used in a multitude of ways, including for a commercial enterprise. There is no question that a commercial entity would not be permitted in a residential zoning district limited to single-family dwellings simply by virtue of the fact that the business operated out of a house.

not extend to "raising and housing pigeons" therein, as this was not an expressly permitted use).

This excluded-unless-expressly-included standard, combined with *Miller*'s "functional analysis," is the only workable standard. A single-family home (or other structure) can be used in as many ways as the imagination allows – for example, as a restaurant, a bakery, a bed and breakfast, a school, a store, a veterinary hospital, a halfway house or a pigeon sanctuary. The rule announced by the Commonwealth Court is impossible for drafters of zoning ordinances to execute. Therefore, we overrule these decisions on that basis.[14]

Moreover, requiring that zoning ordinances state every conceivable impermissible use would negate the deference to which a zoning hearing board is entitled in the interpretation of its municipality's zoning ordinances. *See Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 907 A.2d 494, 500 (Pa. 2006) ("courts ordinarily grant deference to the zoning board's understanding of its own ordinance because, as a general matter, governmental agencies are entitled great weight in their interpretation of legislation they are charged to enforce") (internal quotation marks omitted). If the Commonwealth Court were correct, and unlisted uses are necessarily permitted in a given zoning district, there would be nothing for the zoning hearing board to interpret.

We agree with Appellants that the Commonwealth Court's decisions have slowly eroded our decision in *Albert*, from *Marchenko* (allowing some transient use) to *Shvekh* (allowing mostly transient use) and now in the case at bar (allowing purely transient use),

---

[14] Whether the outcomes of *Marchenko* and *Shvekh* are otherwise correct is not presently before this Court.

differentiating *Albert* on less and less convincing grounds. Contrary to the Commonwealth Court's conclusion below (and the advocacy provided by Amicus), there is nothing in our *Albert* decision that limits its utility to cases where the zoning ordinance leaves the word "family" undefined. As stated above, *Albert* incorporated the definition of "single housekeeping unit" as the common usage of the word "family" in a zoning ordinance, which is the phrase used in the Ordinance here to define "family."

We find Amicus' attempt to distance the *Miller* and *Albert* decisions from the case at bar based on the "housekeeping units," i.e., the individuals to whom the respective properties were being rented, to be unconvincing. Even if we could accept, for the sake of this argument, the contention that the signer of the lease of the Property constituted the "family," and the remaining eleven to sixteen people staying at the Property were his or her guests, this argument fails. Our holding in *Albert* could not be clearer: a purely transient use of a property is incompatible with the definition of a "family" defined as "a single housekeeping unit." As the signor of the rental agreement for the Property is likewise transient, staying at the Property for only a few days at a time, that individual cannot constitute a "family" as defined.

We further find that Amicus' reliance upon our decision in *Peterson* for affirmance of the Commonwealth Court's decision to be misplaced, as *Peterson* amply supports our decision reversing that court. Although Amicus is correct that in that case, we held that a zoning ordinance's inclusion of cement manufacturing as a prohibited use in a given district did not extend to also prohibit concrete manufacturing, Amicus ignores the lengthy discussion engaged in by the *Peterson* Court to differentiate the manufacture of cement from that of concrete. *See Peterson*, 195 A.2d at 526. Based on a delineation of the

different processes for manufacturing cement and concrete, the Court observed that there is "nothing inherently objectionable about the production of concrete, whereas cement manufacture does work discomfort to the inhabitants of the vicinage." *Id.* It thus concluded that a cement manufacturing plant is not excluded by the ordinance based on the stated exclusion of concrete manufacturing in the district because it is not the functional equivalent of a concrete manufacturing plant. *Id.*

The requirement that courts strictly construe a zoning ordinance does not mean that they must ignore uses that clearly fall outside those that are permitted by the ordinance. *See, e.g., Lex*, 725 A.2d at 238 (*supra*, pp. 26-27). The use of the Property is not by a "family" because the users do not function as a "family" as defined by the Ordinance. There is no ambiguity in the language of the Ordinance because there is no ambiguity in the phrase "single housekeeping unit" that is at the heart of the definition of "family." Zoning District A permits the use of a single-family detached dwelling. This requires use by a single housekeeping unit. This Court has clearly and straightforwardly defined single housekeeping unit as precluding purely transient use.

The use in the case at bar is purely transient. Individuals rent the premises for a minimum of two nights and up to one week at a time. Kleyman estimated that the Property was rented twenty-five separate times over a one-year period. As Kleyman acknowledged during his testimony, this fits squarely within the common usage of the word "transient." *See* N.T., 11/12/2014, at 310. The use is not as a single-family dwelling,

i.e., use by a single housekeeping unit, and therefore, is not a permitted use in Zoning District A.[15]

We therefore reverse the decision of the Commonwealth Court and reinstate the decision of the Board, as affirmed by the trial court.

Chief Justice Saylor and Justices Baer, Todd, Dougherty, Wecht and Mundy join the opinion.

---

[15] On February 20, 2019, Amicus filed a request for post-submission communication contending that a recently decided case of the Georgia Supreme Court, *Morgan Cnty. v. May*, __ S.E.2d __, 2019 WL 654190 (Ga. Feb. 18, 2019), was instructive. We grant Amicus' request to submit the communication, but disagree that it is helpful, let alone instructive. While the *May* case involved the permissibility of short-term rentals in a residential zoning district, the ordinance in question used different language than the Ordinance at issue here. Most notably, the Morgan County ordinance did not use the phrase "single housekeeping unit," as the Ordinance does. Thus, we need not discuss the decision, which necessarily is not precedential.