IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Glenn O. Hawbaker, Inc. :
:
v. :
Zoning Hearing Board of :
Sugarloaf Township :
:
v. : No. 44 C.D. 2019
: Submitted: October 11, 2019
William J. Watt, II and Beverly J. Watt, :
h/w, Patrick Clasen, Thomas Buliano :
and Mary Buliano, h/w, Alexander :
Sloot and Jennifer Sloot, h/w, Jeffrey :
Butala and Susan Butala, h/w :
:
Appeal of: Glenn O. Hawbaker, Inc. :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED:  July 14, 2020


Glen O. Hawbaker, Inc. (Hawbaker) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) affirming the determination of the Sugarloaf Township Zoning Hearing Board (Board) that denied Hawbaker's zoning permit application for a proposed asphalt plant on the basis that a special exception was required and the standards for a special exception were not met. Hawbaker argues that the trial court erred because a special exception was not required under

the Sugarloaf Township Zoning Ordinance (Ordinance),[1] which classifies all manufacturing uses as permitted uses in the industrial zone. Discerning no error, we affirm.

## I. Background

Hawbaker is a general construction company incorporated in Pennsylvania that operates asphalt manufacturing facilities across the Commonwealth. Hawbaker purchased a 16-acre parcel along Tomhicken Road in Sugarloaf Township (Township), Luzerne County, Pennsylvania (Property), which is located in the I-1 General Industrial and Mining District (I-1 District) – the Township's only industrial zone. Hawbaker purchased the Property for the purpose of constructing and operating a new asphalt plant.

In 2016, Hawbaker filed a Request for Zoning Determination and a Zoning Application (Application) with the Township seeking approval for the proposed asphalt plant. The Township's zoning officer denied the Application on the basis that Hawbaker must obtain a special exception per Section 27-406.1 of the Ordinance. Hawbaker appealed the denial to the Board.

The Board held public hearings on the matter. A group of neighbors (Objectors) appeared in opposition. Ultimately, the Board voted unanimously to deny the appeal. The Board determined that the proposed manufacturing use at the Property required a special exception even though it was classified as a "Principal Permitted" use under Section 27-406 of the Ordinance. Hawbaker failed to meet its burden of showing compliance with the special exception criteria, specifically requirements pertaining to air quality management, a 35-foot height limitation and

---

[1] The Ordinance was adopted in October 2005.

fuel storage concerns. Even assuming Hawbaker met its burden, the Board determined that the Objectors presented credible testimony as to health and safety, property values and traffic concerns to justify denying the special exception.

Hawbaker then appealed to the trial court on two grounds. Primarily, Hawbaker argued that the Ordinance allows for the proposed manufacturing use without special exception approval. Alternatively, Hawbaker asserted that it met the requirements for a special exception. Without taking additional evidence, the trial court affirmed. The trial court determined that all uses in the I-1 District, including permitted uses, must meet special exception standards under the express intent of the Ordinance, which Hawbaker did not meet. This appeal now follows. The Objectors intervened.

## II. Issue

The sole issue on appeal is whether the trial court erred by upholding the Board's determination that the proposed asphalt plant requires special exception approval when the Ordinance clearly classifies such use as a "Principal Permitted" use in the I-1 District.[2]

## III. Discussion

The issue presented requires us to determine whether the proposed asphalt plant is subject to the special exception requirements under the Ordinance. To evaluate this claim, we must interpret the language of the Ordinance. This presents a question of law for which our standard of review is *de novo* and our scope of review is

---

[2] Hawbaker does not appeal the trial court's determination that its proposed asphalt plant did not meet the special exception requirements under the Ordinance. *See* Appellant's Brief at 4, 14 n.7.

3

plenary. *Slice of Life, LLC v. Hamilton Township Zoning Hearing Board*, 207 A.3d 886, 898 (Pa. 2019). In addition, we are bound by the facts as found by the Board that are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

The general rules of statutory construction apply to the interpretation of zoning ordinances. *Slice of Life*, 207 A.3d at 899. The primary objective of statutory construction in this context is to determine the intent of the governing body that enacted the ordinance. Section 1921(a) of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §1921(a). Generally, an ordinance's plain language provides the best indication of this legislative intent, and as such, ordinance interpretation begins with examination of the text itself. *See* 1 Pa. C.S. §1921(b). When reading the plain text of an ordinance, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. §1903(a). An ordinance must be construed, if possible, to give effect to all of its provisions so that no provision is mere surplusage. 1 Pa. C.S. §1921. Where the language of an ordinance is free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. §1921(b). Thus, if the Court determines the ordinance provision at issue is unambiguous, it must apply it directly as written. *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013); 1 Pa. C.S. §1921(b).

However, when the statutory language is ambiguous, we may look to Section 1921(c) of the Statutory Construction Act for guidance. *Berner v. Montour Township Zoning Hearing Board*, 217 A.3d 238, 245 (Pa. 2019). Section 1921(c) provides:

4

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. §1921(c). An ambiguity exists when language is subject to two or more reasonable interpretations, not merely because two conflicting interpretations may be suggested. *Roethlein v. Portnoff Law Associates, Ltd.*, 81 A.3d 816, 824 (Pa. 2013).

Finally, a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. *Slice of Life*, 207 A.3d at 902. Notwithstanding, "where doubt exists as to the intended meaning of the language written and enacted by the governing body," it must be resolved in favor of the landowner and the least restrictive use of the land. Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC);[3] *accord Slice of Life*, 207 A.3d at 899.

---

[3] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L., 1329, 53 P.S. §10603.1.

5

Guided by these principles of statutory construction, we examine the Ordinance and the parties' proffered interpretations. Section 27-406 of the Ordinance provides:

> I-1 General Industrial and Mining District.
>
> 1. Specific Intent. It is the purpose of this district to provide for an area where a wide variety of industrial uses may be located. Because of the physical nature of the land included within this district, all uses permitted within the district, with the exceptions of communications antennas, communication equipment buildings and communications towers are permitted only after a special exception has been granted.
>
> 2. Principal Permitted Uses. (Refer to Table No. 1)
>
> 3. Uses Permitted by Special Exception. (Refer to Table No. 1)
>
> 4. Area, Yard and Height Regulations. (Refer to Schedule I)
>
> 5. General Regulations. All applicable requirements of Part 5 shall apply to the I-1 District.

Reproduced Record (R.R.) at 5a. According to Table No. 1, the following uses are classified as "Principal Permitted Uses" in the I-1 District: food processing, large-scale manufacturing development, manufacturing uses, and recycling establishments. Section 27-407 of the Ordinance; R.R. at 11a. The following uses are designated as "Special Exception" uses in the I-1 District: Earth moving industries, sanitary landfill, sewage treatment plant, solid waste transfer station, and tire retreading and recapping. R.R. at 11a. There is no dispute that Hawbaker's proposed asphalt facility is a "Principally Permitted" manufacturing use.

The Ordinance also provides that "[s]hould any requirement of any other Chapter of the Township Code be found to be in conflict with any requirement of this

6

Chapter, the more restrictive of the two shall prevail." Section 27-103 of the Ordinance. The Ordinance does not provide guidance regarding conflicts within a single chapter. As the trial court aptly noted, we are dealing with an apparent conflict within one chapter of the Ordinance.

The Board's interpretation of Section 27-406 of the Ordinance is that "all uses" in the I-1 District, whether principal permitted or special exception, must meet the special exception criteria. Hawbaker posits that the Board's interpretation eradicates any distinction between principal permitted and special exception uses by requiring principal permitted uses to meet the special exception criteria. In other words, two different uses cannot be held to the same standard. Therefore, under Hawbaker's interpretation, only the special exception uses are subject to the special exception criteria; principal permitted uses are not.

Under the MPC, there is no requirement that different uses must have different applicable provisions. *See* Section 605 of the MPC, 53 P.S. §10605. Section 605 of the MPC provides that "[t]he provisions of all zoning ordinances may be classified so that different provisions *may be applied* to different classes of situations, uses and structures . . . ." *Id.* (emphasis added). "Where zoning districts are created, all provisions shall be uniform for each class of uses . . . within each district, except that additional classifications may be made within any district" in certain circumstances. *Id.* Additional "regulation, restriction or prohibition of uses and structures" may be established at, along or near: . . . (iii) places of relatively steep slope or grade, or other areas of hazardous geological *or topographic features . . .* or (vii) *places having a special character or use affecting and affected by their surroundings.*" 53 P.S. §10605(2)(iii), (vii) (emphasis added).

7

Upon review, the Ordinance clearly subjects "*all* uses permitted" within the I-1 District to the special exception criteria "[b]ecause of the physical nature of the land included within [the I-1 District]." Section 27-406(1) of the Ordinance (emphasis added). The Ordinance specifically excepts "communications antennas, communication equipment buildings and communications towers" from meeting this standard. *Id.* The fact that the same criteria are applicable to both "Principal Permitted Uses" and "Uses Permitted by Special Exception" does not render the provision ambiguous, nor does it run afoul of the MPC. Under the plain text and specific intent of the Ordinance, there is no doubt that the governing body intended "Principal Permitted" uses in the I-1 District to meet the special exception criteria. Section 27-406(1) of the Ordinance. There is no ambiguity.

Contrary to Hawbaker's assertions, simply because the Ordinance subjects "Principal Permitted" uses and "Special Exception" uses to the same criteria does not eviscerate the classifications or otherwise render them meaningless or superfluous. For example, Section 27-305 of the Ordinance provides that "[w]here a use is specifically enumerated in a less restrictive zone, such use shall not be permitted in a more restrictive zone unless it is specifically enumerated as a permitted use therein." In the case here, this means that by specifically enumerating "manufacturing use" as a permitted use in the I-1 District, which is the least restrictive zone, this use is not permitted in any other district unless specifically permitted. The import of the classifications extends beyond Section 27-406 of the Ordinance.

Although none of the other district's specific intent provisions require the permitted uses to meet the special exception standard, they do require all uses within each district to comply with the Ordinance's general regulations. *See* Sections 27-402 – 27-406 of the Ordinance. Some provisions require all uses to meet sufficient lot size

requirements to provide for both onsite sewage disposal and water supply where necessary. *See* Sections 27-402, 27-403 of the Ordinance. The notion that different uses within the same district cannot be subject to the same standard or criteria is simply unfounded.

Furthermore, even if we were to assume that an ambiguity exists, Hawbaker would still not be entitled to zoning relief. The purpose of the I-1 District is to establish an "area where a wide variety of industrial uses may be located." Section 27-406(1) of the Ordinance. However, "[b]ecause of the physical nature of the land included within this district," the governing body clearly intended for "all uses permitted within the district" to meet the special exception standard. *Id.* The special exception standard provides additional consideration and safeguards because of the physical nature of the land in the I-1 District. The clearest reconciliation of any asserted ambiguity is that "all uses" refers to all uses listed in Table No. 1, including "Principal Permitted" and "Special Exception" uses. To accept Hawbaker's interpretation would essentially nullify the governing body's express intent. Such an interpretation is not reasonable.

## IV. Conclusion

For these reasons, we conclude that the trial court did not err in its conclusion that Hawbaker's proposed manufacturing use is subject to the special exception criteria under the Ordinance. Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Glenn O. Hawbaker, Inc.          :
                                                :
               v.               :
Zoning Hearing Board of        :
Sugarloaf Township           :
                                                :
               v.               : No. 44 C.D. 2019
                                                :
William J. Watt, II and Beverly J. Watt, :
h/w, Patrick Clasen, Thomas Buliano  :
and Mary Buliano, h/w, Alexander   :
Sloot and Jennifer Sloot, h/w, Jeffrey :
Butala and Susan Butala, h/w      :
                                                :
Appeal of: Glenn O. Hawbaker, Inc.  :

# O R D E R

AND NOW, this 14th day of July, 2020, the order of the Court of Common Pleas of Luzerne County, dated December 6, 2018, is AFFIRMED.

 

_____

MICHAEL H. WOJCIK, Judge