IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William F. Goodrich, et ux, Councilperson    :
Darlene Harris, Brighton Heights Citizen    :
Federation, James Malanos, Greg Hereden,    :
Tim Sullivan, Beth Galasha, Stacy Berkebile,    :
Kathleen Diaz, Joseph Glassbrenner,    :
Alexander Carraro, Michelle Vaughn, Denise    :
Ranalli Russell    :
    : No. 847 C.D. 2019
        v.    : Argued: February 10, 2020
    :
The City of Pittsburgh Zoning Board of    :
Adjustment, and City of Pittsburgh, and    :
Three Rivers Youth    :
    :
Appeal of: Three Rivers Youth    :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON               FILED: **April 15, 2020**


Three Rivers Youth (Applicant) appeals from an order of the Court of Common Pleas of Allegheny County (Trial Court), reversing the decision of the City of Pittsburgh Zoning Board of Adjustment (ZBA), which granted its application for a special exception to use two buildings on two parcels as a community home for individuals recovering from alcohol and/or drug addiction. The Trial Court concluded Applicant did not establish that its use qualified as a "community home" under Section 911.02 of the City of Pittsburgh's (City) Zoning Code. PITTSBURGH, PA., Zoning Code, Title 9, §911.02 (Code). It also determined Applicant did not meet the criteria for a special exception. Upon review, we affirm.

# I. Background

Applicant owns two parcels located at 2039 and 2051 Termon Avenue in a Residential Single Unit Detached, Moderate Density (R1D-M) District in the Brighton Heights neighborhood (Property). Comprised of single-family dwellings, this is the most restrictive residential district. One building is located on each parcel, each with 10 bedrooms, bisected by a shared 20-car parking lot.

Previously, Applicant operated the building at 2051 Termon Avenue as a children's home under a 1973 certificate of occupancy for a "one-story institutional (facility) building for ten children and three house parents." ZBA Dec., 8/16/18, Finding of Fact (F.F.) No. 3. However, starting in 2001, Applicant operated a temporary shelter for 12 teenage girls, ages 11 to 17, with 24-hour supervision. Previously, Applicant operated the building at 2039 Termon Avenue as an office.

In 2017, Applicant began using both buildings on the Property as transitional housing for adults recovering from addiction (Facilities),[1] accepting referrals from Allegheny County (County). Applicant did not obtain the necessary zoning approvals for this new use prior to operating the Facility. F.F. No. 5.

After the fact, in late 2017, Applicant filed an application for a special exception seeking approval of its new use of the Property as a community home[2] housing up to 30 adults, males in one building, females in the other. Applicant also

---

[1] Although Applicant initially referred to the buildings collectively as a community home, Appellant's Brief at 13, it used the plural in its reply brief, contending each qualifies as an approved community home use. As the buildings are separate, we use the more accurate term "Facilities."

[2] A "community home" is "a group of more than eight unrelated disabled persons living together as a single housekeeping unit with shared common facilities." Code §911.02.

sought a variance from the special exception criterion that the number of persons served by a community home "shall not exceed an average of one per bedroom" because some bedrooms accommodated more than one person. Code §911.04.A.84.

In January 2018, the ZBA held a hearing on Applicant's first request for approval of its community home use in the R1D-M district. During the hearing, the ZBA received evidence regarding Applicant's prior use of the Property as a shelter for 12 underage teenagers. Neighboring residents appeared at the hearing objecting to the requested use (Objectors), citing nuisances that use posed and its negative impact on their quality of life and property values. Objectors included the president of Brighton Heights Citizens Federation (Federation), who confirmed the Federation's opposition to the use, and City Councilperson Darlene Harris.[3]

Following the first hearing, the ZBA denied the requested variance. *See* Reproduced Record (R.R.) at 71a-77a. In so doing, the ZBA noted that in proposing a facility that would serve 30 persons in 20 bedrooms, Applicant's request affected use density, which was held to the stricter standards for a use variance. R.R. at 76a. Because Applicant did not satisfy the person per bedroom requirement, it also did not qualify for a special exception. Applicant did not appeal that decision. F.F. No. 9.

In May 2018, Applicant filed the instant application for a special exception proposing the same use as a community home, but housing 20 people, 10 persons in each building (Application). The Application included revised building plans for the Property reflecting the occupancy of one person per bedroom.

---

[3] Objectors, who collectively are the appellees in this appeal, also include William F. Goodrich, James Malanos, Greg Hereden, Tim Sullivan, Beth Galasha, Stacy Berkebile, Kathleen Diaz, Joseph Glassbrenner, Alexander Carraro, Michelle Vaughn and Denise Ranalli Russell.

The ZBA held a second hearing on Applicant's community home use. Again, Objectors opposed the Application, submitting letters of residents who could not appear at the hearing. F.F. No. 19. Applicant presented updated testimony of its Case Manager, Stephanie Clark, and Vice President, Aaron Mickens, regarding the alteration of certain bedrooms and creation of communal spaces for 20 residents. Vice President confirmed Applicant stopped accepting referrals, and it did not currently house any residents. Also, he noted Applicant submitted a revised proposal to the County to reflect the reduced number of residents and current building plans.

Based on the combined record,[4] the ZBA issued its findings and a decision granting the Application. R.R. at 13a-18a. It found Applicant's Facilities qualified as a community home use and met the special exception criteria for that use. It found the Facilities would be used as transitional housing, with a maximum stay of 90 days, for adults recovering from addiction following an "intensive rehabilitation program." F.F. No. 13. Relevant here, the ZBA found "some [residents] who will be admitted will be recently released from correctional facilities …." *Id.* (emphasis added).

Based on Objectors' testimony, the ZBA also made findings regarding the negative impact on the neighborhood. *See* F.F. Nos. 18-21. It found that Objectors did not demonstrate a detrimental impact from permitting the proposed use.

Ultimately, the ZBA determined Applicant met its burden of showing its use met the definition of community home and related special exception criteria; thus, it granted the application. Objectors appealed to the Trial Court.

---

[4] To avoid duplicative testimony, the ZBA considered the record from the first hearing.

4

Relying on the existing record, the Trial Court concluded the ZBA erred in construing the definition of "community home" and in determining that Applicant met the special exception criteria for a community home use. It reasoned "[Applicant] did not provide sufficient evidence that the use is a community home where residents are living together as a single housekeeping unit." Tr. Ct., Slip Op., 5/29/19, at 3. The Trial Court underscored that there were no required group activities and each client had an individual program. Noting the maximum stay was 90 days, and often shorter, it recognized that "residents could be sent to the [Facilities] from the jail" under its contract with the County. *Id.* at 4. Thus, the Trial Court reversed the ZBA's decision.

Applicant filed a notice of appeal from the Trial Court's decision to this Court. Following briefing and argument, the matter is ready for disposition.

## II. Discussion

On appeal,[5] Applicant asserts the Trial Court erred in holding the Facilities did not qualify under the Code's definition of "community home." It also contends the Trial Court did not afford proper deference to the ZBA's construction of the Code. Because the ZBA did not deem its acceptance of residents from the jail disqualifying, Applicant contends its use meets the definition of "community home."

Objectors counter that the Trial Court construed the Code consistent with case law defining a single housekeeping unit. As to special exception criteria,

---

[5] When, as here, a trial court accepts no additional evidence, "our review is limited to considering whether the zoning hearing board erred as a matter of law or abused its discretion." *S. of S. St. Neighborhood Ass'n v. Phila. Zoning Bd. of Adjustment*, 54 A.3d 115, 119 n.1 (Pa. Cmwlth. 2012). "An abuse of discretion occurs when the findings of the [ZBA] are not supported by substantial evidence." *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hr'g Bd.*, 102 A.3d 549, 553 n.6 (Pa. Cmwlth. 2014).

Objectors argue the ZBA did not assess the impact of two side-by-side community homes on the neighborhood as it should have done. Specifically, Objectors assert the ZBA did not analyze criterion (f) based on its legal conclusion that an assessment of neighborhood need was unenforceable. Conclusion of Law No. 14.[6]

## A. Principles of Construction & Legal Presumptions

In general, "zoning ordinances [are] liberally construed and interpreted broadly so that a landowner may have the benefit of the broadest possible use of the land." *Tennyson v. Zoning Hr'g Bd. of W. Bradford Twp.*, 952 A.2d 739, 745 (Pa. Cmwlth. 2008). However, "whether a proposed use … falls within a given category specified in a zoning ordinance is a question of law." *Id.*

Generally, the courts recognize a zoning board has expertise in applying the local ordinance it enforces and defers to a zoning board's application of the ordinance. This includes whether a proposed use satisfies special exception criteria. A special exception is "a use expressly contemplated that evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the community." *Allegheny Tower Assocs., LLC v. City of Scranton Zoning Hr'g Bd.*, 152 A.3d 1118, 1123 (Pa. Cmwlth. 2017).

"[A] special exception applicant has the duty to present evidence and the burden of persuading the [ZBA] that its proposed use meets the ordinance's objective requirements." *Id.* at 1121. Once an applicant establishes that a proposed

---

[6] In support, the ZBA cited Section 804(f)(3)(B) of the Fair Housing Act, 42 U.S.C. §3604(f)(3)(B) (prohibiting discrimination based on disability, to include drug and alcohol addiction).

6

use is a type permitted by the ordinance, and that the proposed use complies with the requirements in the ordinance for the use, "a presumption arises that the use is consistent with the health, safety and general welfare of the community." *Id.* The burden then shifts to objectors to rebut the presumption. *Id.*

Ultimately, the function of zoning boards "is only to enforce the zoning ordinance in accordance with applicable law." *Riverfront Dev. Grp., LLC v. City of Harrisburg Zoning Hr'g Bd.*, 109 A.3d 358, 364 (Pa. Cmwlth. 2015). As such, the zoning board has the duty to apply an ordinance as it is written, consistent with the plain meaning of its terms. *Id.*; *see also Slice of Life, LLC v. Hamilton Twp. Zoning Hr'g Bd.*, 207 A.3d 886 (Pa. 2019) (holding web-based rental of single family dwelling was not a permitted use within residential district as residents did not meet common definition of "single housekeeping unit").

Here, Applicant contends its proposed use of the Facilities constitutes a "community home" as defined by the Code. A "community home" use is permitted in all residential zoning districts, subject to the special exception criteria set forth in Section 911.04.A.84 of the Code.[7]

---

[7] The six criteria for a special exception for use as a community home are as follows:

(a) Dwelling unit shall have one primary means of ingress/egress, a single mail box, single utility connections and common cooking/eating areas;

(b) no alteration to exterior structure, unless required under health/safety codes;

(c) number of unrelated disabled persons is not to exceed an average of one per bedroom;

(d) one parking space for every 3 persons on duty;

(e) on-site offices limited to the program use; and

(f) … the proposed Community Home will not impact the neighborhood by contributing to the saturation of 'Community Homes' or other social service institutions.

ZBA Dec., Conclusion of Law (C.L.) No. 3.

7

## B. "Community Home" Definition

We begin our analysis with the Trial Court's determination that the Facilities do not qualify as a "community home" as that term is defined in the Code. Applicant bore the burden to prove that its use of the Facilities meets the definition.

The Code defines community home as "a group of more than eight unrelated disabled persons living together as a <u>single housekeeping unit</u> with shared common facilities." Code §911.02 (emphasis added). It further provides:

> A Community Home may not be a Multi-Suite Residential use or an Assisted Living use as defined in Section 911.02. For the purposes of this definition, 'disabled' means 'handicapped as defined according to the Fair Housing Amendments of 1988, 42 U.S.C. [§]3602(h), and any amendments thereto. This use does not include Custodial Care facilities. This use includes halfway houses[8] where persons are aided in readjusting to society following a period of hospitalization or institutionalized treatment for a medical, psychiatric, developmental, emotional, or other disability or handicap. <u>This does not include halfway houses for people leaving a correctional facility</u>.

*Id.* (emphasis added).

Adopting our Supreme Court's approach in *Slice of Life*, we begin by construing the Code provision. "This presents a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Id.* at 898. While we construe defined terms in the Code based on their definition, "undefined words and phrases that appear in a zoning ordinance are to be given their 'plain and ordinary meaning.'" *Id.* at 899.

---

[8] As the Code does not define "halfway house," we consider the dictionary definition. *See THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 343 (Pa. Cmwlth. 2014). In pertinent part, "halfway house" is defined as "2. A rehabilitation center where people who have left an institution, such as a hospital or prison, are helped to readjust to the outside world." *Halfway house*, <u>Am. Heritage Dictionary</u> 589 (2d Coll. ed. 1985).

8

### 1. Single Housekeeping Unit

First, we consider the Trial Court's conclusion that Applicant did not establish use as a community home because it did not show that its residents function as a single housekeeping unit. The term "'single housekeeping unit' is a term of art." *Id.* Our Supreme Court "adopted the common definition of 'single housekeeping unit,' used by courts throughout the country, as requiring the [persons] residing in the home to function as a family and to be 'sufficiently stable and permanent.'" *Id.*

The Court performs a "functional analysis" to determine whether use of a residence functions as a single housekeeping unit. *Albert v. Zoning Hr'g Bd. of N. Abington Twp.*, 854 A.2d 401, 406 (Pa. 2004) (holding retreat housing females recovering from addiction, for a stay of two to six months prior to rejoining their families, did not qualify as a single housekeeping unit). In so doing, the Court reviews the relationship between members of the unit and commonality of purpose, as reflected in shared responsibilities and activities. *See In re Appeal of Miller*, 515 A.2d 904 (Pa. 1986) (residence comprised of mentally and physically handicapped boarders qualified as single housekeeping unit as they functioned like a family).

The Court explained a single housekeeping unit may be established when the occupants of a home "lived and cooked *together* … attended social and religious functions *together* and celebrated holidays jointly …  and *the activities of the home were shared in by **all** occupants …*." *Slice of Life*, 207 A.3d at 890 (emphasis added). Also, "the composition of the group must be sufficiently stable and permanent so as not to be fairly characterized as purely transient."[9] *Id.* at 891.

---

[9] A web-based rental of a residence was "purely" transient, with stays as short as two days. This is readily distinguishable from transitional housing that is temporary by design.

There is no authority for Applicant's proffered construction that the term "single housekeeping unit" has a different meaning depending on the context.[10] To the contrary, our highest court emphasized "there is no ambiguity in the phrase." 207 A.3d at 903. We reject Applicant's suggestion that this Court ignore the plain meaning of the term and the functional test traditionally applied when construing that term of art in the context of a community home under the Code.

More recently, in construing this term in the Code provision at issue, this Court noted that the term "single housekeeping unit" is reserved for facilities in which the residents function as a housekeeping unit or household. *See Bernstein v. City of Pittsburgh Zoning Bd. of Adjustment* (Pa. Cmwlth., No. 1565 C.D. 2010, filed May 5, 2011), 2011 WL 10845847 (unreported) (approving zoning board's conclusion that residence did not qualify as community home when evidence not sufficient to show shared facilities or common living purpose).[11] In *Bernstein*, in construing the factors showing a community home use, this Court concluded that the evidence of a single housekeeping unit was lacking. Specifically, we noted:

> there was no evidence presented indicating that the residents of the [purported community home] would function as a housekeeping unit or a household- that the residents would share housekeeping duties such as chores or live as a unit. The residents would not necessarily take meals together. They would not share a kitchen, although food would be made available to them. They would not share common areas or recreational facilities aside from the television room.

Slip op. at 7, 2011 WL 10845847, at *4.

---

[10] Nevertheless, in context, we acknowledge that to qualify as a home as opposed to a house, and a unit as opposed to individuals, and merit designation as a community home, entails collective efforts as one reflecting that residents share a community as well as living space.

[11] This case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

Similarly, in this case, we agree with the Trial Court that there is no evidence that residents share household tasks or live as a unit, such as by sharing meals or engaging in group activities.

Also, residents are limited to a <u>maximum</u> stay of 90 days. F.F. No. 13. That means, at a minimum, the occupancy of the Facilities turns over four times per year. Applicant's witness confirmed that a resident's stay may be much shorter, "the reality is it could be interrupted at any given time. Somebody could be there for 30 days [or] for 60." R.R. at 264a. Residents may be ejected within their first month.

While transience remains a relevant consideration in applying the functional test, in the context of transitional housing, the Court noted "[our] focus [is] 'directed to the quality of the relationship between the persons as opposed to its duration.'" *Slice of Life*, 207 A.3d at 890-91 n.1 (citing *Miller*, 515 A.2d at 909). We echo *Miller* in that our focus is on whether the group of Applicant's residents lives together as a unit, acting as a community with collective responsibilities.

Employing the functional analysis test, the Trial Court did not err in holding the Facilities do not qualify as a "single housekeeping unit." As the Trial Court noted, residents have individualized recovery programs, and there are no mandatory group activities. Each client lives and functions independently and each client is responsible for his or her own cooking, laundry and cleaning, as opposed to sharing such household responsibilities. R.R. at 274a. The clients do not take meals together. The Facilities do not host any recovery or clinical programs. R.R. at 275a. Although Case Manager testified about the common living, dining and shared space,

11

this does not sufficiently establish the residents live as a single housekeeping unit. Rather, that supports the "with shared common facilities" part of the definition.[12]

Applicant's proposed use of the Facilities fell outside the use as a community home because its use did not qualify under the Code definition or the component definition of "single housekeeping unit." Accordingly, the Trial Court properly reversed the ZBA's grant of a special exception to Applicant for a "community home" use.

## 2. Exclusions from Definition

In addition, the express exclusions from the definition of community home also preclude the Facilities from qualifying as a "community home." Significantly, the definition of community home *expressly excludes* transitional housing "for people leaving a correctional facility." *Id*.

The record developed by the ZBA shows that Applicant would accept residents leaving correctional facilities, in direct contravention of that exclusion. Indeed, the contract with the County required Applicant to accept residents referred from the jail. Applicant was not permitted to refuse services to residents based on the referral source. R.R. at 106a (request for proposal noted applicants may not "refuse to serve anyone based on … criminal history"). Further, it noted residents may come from a "jail drug and alcohol treatment program." *Id.*

---

[12] We note there is also scant evidence that the residents have "shared common facilities," another prerequisite for use as a community home. Code §911.02. Courts consider the following when discerning whether residents shared common facilities: "The same furnishings were throughout the house …. Each occupant had access to all areas of the premises. There was only one kitchen, the meals were taken by all as a group in one sitting." *Slice of Life, LLC v. Hamilton Twp. Zoning Hr'g Bd.*, 207 A.3d 886, 890 (Pa. 2019).

The ZBA found the Facilities would house residents who were "recently released from correctional facilities." F.F. No. 13. Based on that finding, and as supported by the record, the Trial Court properly concluded that Applicant's use of the Facilities was excluded from the definition of "community home." There is no indication on the record that Applicant was complying with that exclusion; to the contrary, it appears Applicant deemed such noncompliance relatively minor.[13]

By concluding the Facilities qualified as community homes despite that exclusion, the ZBA disregarded the plain language of the Code. *Riverfront Dev. Grp.* As such, the ZBA erred, warranting reversal by the Trial Court.

### C. Special Exception

Because Applicant's proposed use did not comport with the definition of "community home" in the Code, we do not address whether Applicant met the special exception criteria in the Code.[14]

### III. Conclusion

For the foregoing reasons, the order of the Trial Court is affirmed.

_____
J. ANDREW CROMPTON, Judge

---

[13] During argument, this Court questioned Applicant as to how it met the definition when it was required to house residents leaving the jail. Significantly, Applicant did not deny that it accepted residents from jail, and it did not indicate it had obtained a waiver or exception from the requirement that it house such residents despite this exclusion. Rather, counsel insisted on the relative insignificance of "one drop" of such residents within the community home use overall.

[14] However, we greet with skepticism whether Applicant met the special exception criteria. The ZBA did not consider Applicant's impact on the neighborhood as a social service institution, concluding that Section 911.04.A.84(f) of the Code was "not enforceable." C.L. No. 14. It was also unclear whether Applicant received a special exception for each separate building.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| William F. Goodrich, et ux, Councilperson Darlene Harris, Brighton Heights Citizen Federation, James Malanos, Greg Hereden, Tim Sullivan, Beth Galasha, Stacy Berkebile, Kathleen Diaz, Joseph Glassbrenner, Alexander Carraro, Michelle Vaughn, Denise Ranalli Russell<br><br>      v.<br><br>The City of Pittsburgh Zoning Board of Adjustment, and City of Pittsburgh, and Three Rivers Youth<br><br>Appeal of: Three Rivers Youth | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : No. 847 C.D. 2019<br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## **O R D E R**

   **AND NOW**, this 15th day of April 2020, the order of the Court of Common Pleas of Allegheny County is AFFIRMED.

              _____
              J. ANDREW CROMPTON, Judge