IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cheri Ann Leinberger, Matthew S.    :
Leinberger, Daniel P. Seneca,    :
Kathleen A. Seneca and    :
William J. Necker,    :
                   Appellants    :
   :
         v.    :  No. 1620 C.D. 2017
   :  Argued: May 12, 2020
   :
Anthony G. Stellar, as Trustee    :
of the Deborah E. Stellar    :
Revocable Trust    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON             FILED:  September 25, 2020

Following remand from the Supreme Court, we reconsider our decision in *Leinberger v. Stellar as Trustee of Deborah E. Stellar Revocable Trust* (Pa. Cmwlth., No. 1620 C.D. 2017, filed October 11, 2018), 2018 WL 4924786 (unreported) (*Leinberger I*), in light of intervening precedent *Slice of Life, LLC v. Hamilton Township Zoning Hearing Board*, 207 A.3d 886 (Pa. 2019) (*Slice of Life II*), regarding the short-term rental use of single-family dwellings. In *Leinberger I*, this Court affirmed the Lehigh County Court of Common Pleas' (Trial Court) order deeming short-term rentals of a family cabin located in a preservation zoning district permissible under the Lynn Township Zoning Ordinance of 1982 (Ordinance). Based on the compatibility of the use with the Ordinance and the facts found below, we affirm the Trial Court's order allowing short-term rentals of a single-family dwelling located in a preservation zoning district.

# I. Procedural Overview

In 2015, individuals owning nearby property (collectively, Neighbors)[1] filed a complaint[2] in the Trial Court against Anthony G. Stellar, as Trustee of the Deborah E. Stellar Revocable Trust (Trustee), to enjoin the short-term rental use of a dwelling on property owned by the Stellar Family Trust (Trust) under Section 617 of the Pennsylvania Municipalities Planning Code (MPC).[3] Initially, the Trial Court enjoined Trustee's short-term rentals as inconsistent with the Ordinance. However, on post-trial motions, the Trial Court ruled in Trustee's favor based on this Court's decisions allowing such use of a single-family dwelling. *See Shvekh v. Zoning Hr'g Bd. of Stroud Twp.*, 154 A.3d 408 (Pa. Cmwlth. 2017), *overruled by Slice of Life II*; *Marchenko v. Zoning Hr'g Bd. of Pocono Twp.*, 147 A.3d 947 (Pa. Cmwlth. 2016), *overruled by Slice of Life II*. In 2017, Neighbors appealed to this Court, which affirmed in *Leinberger I*. Neighbors then appealed to the Supreme Court, which vacated our order and remanded the matter for review under its 2019 decision in *Slice of Life II*.

---

[1] Cheri Ann Leinberger, Matthew S. Leinberger, Daniel P. Seneca, Kathleen A. Seneca and William J. Necker, referred to as Neighbors in *Leinberger I*, own property proximate, but not necessarily adjacent, to the subject property.

[2] The complaint also included a public nuisance claim, on which Neighbors prevailed, and which is not at issue on appeal.

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10617. Section 617 of the MPC, entitled "Causes of action," provides in relevant part:

> In case any building, structure, landscaping or land is, or is proposed to be, erected, constructed, reconstructed, altered, converted, maintained or used in violation of any ordinance enacted under this act or prior enabling laws, the governing body or, with the approval of the governing body, an officer of the municipality, or any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building, structure, landscaping or land, or to prevent, in or about such premises, any act, conduct, business or use constituting a violation.

53 P.S. §10617 (emphasis added).

## II. Background

### A. Material Facts

The Trust owns a 48.1-acre property located at 7963 Springhouse Road, New Tripoli, Lynn Township (Township), Pennsylvania (Property). The Property lies within two different zoning districts, the Blue Mountain Preservation (BM) zoning district and the Agriculture Preservation (AP) zoning district. Both zones permit a limited number of uses, including use as a single-family detached dwelling.

In the AP zoning district, the Property is improved with a luxury cabin (Cabin) that is designed as a single-family detached dwelling. Reproduced Record (R.R.) 593a ("The [C]abin is in AP."). Relevant here, the purposes of the AP zone

> are to promote the continued use of the area for agricultural purposes and to protect the integrity of the area for agricultural uses. Although limited non-agriculturally related residential development is permitted, <u>this district is not intended to serve as an area for widespread suburban/exurban development</u>.

Lynn Twp., Pa., Zoning Ordinance §341 (1982) (Intent of AP Zone) (emphasis added).

Since 2010, Trustee rented the Cabin to third parties for various lengths of time, ranging from two nights to a few weeks. Trustee rented the entire Cabin to a single group at a time. Trustee's family occasionally reserved the Cabin for events, but did not use it as a primary residence. Also, Trustee's family and friends visited the Cabin when it was not reserved for renters or a family event. For approximately 30% of the year, the Cabin is rented to third parties, whereas for the remainder of the year, the Cabin is used by or available for use by Trustee's friends and family. *See* R.R. at 475a-76a, 480a-84a.

Starting in 2015, Neighbors complained Trustee's short-term rental use of the Property impaired their enjoyment of their homes and enlisted the Township to prohibit rental of the Cabin and related recreational use of its environs. When the Township declined, and advised the short-term rentals did not violate the Ordinance, Neighbors filed a private enforcement action pursuant to Section 617 of the MPC, seeking to enjoin Trustee's use of the Property for short-term rentals as inconsistent with the permitted use as a single-family dwelling under the Ordinance.[4]

Neighbors' suit proceeded to a two-day bench trial in February 2017, where the parties, manager of the Property and the Township zoning officer testified. After trial, the Trial Court issued an order enjoining Trustee from short-term rental use of the Cabin. In so doing, the Trial Court concluded that Trustee's short-term rentals violated the Ordinance because the use of the Cabin did not meet the definition of a "single-family detached dwelling as set forth in the Ordinance." Tr. Ct., Slip Op., 6/7/17, at 22 (Original Op.). It acknowledged "[Neighbors] did not appear to challenge all of the components of [Section 925.3]" except for "use of the word 'family.'" *Id.* at 15. However, recognizing "the groups of people who use [the Cabin] periodically, whether they are the family of [Trustee] or renters, appear to function as a group or family," the Trial Court noted "there is no permanency to their residing [i]n the [Cabin]." *Id.* at 22 (emphasis added). Relying on *Albert v. Zoning Hearing Board of North Abington Township*, 854 A.2d 401 (Pa. 2004), and *Appeal of Miller*, 515 A.2d 904 (Pa. 1986), the Trial Court concluded the meaning of "family" necessarily included components of stability and permanency. Original Op. at 22.

---

[4] Section 925.3 of the Ordinance defines "Dwelling unit – single[-]family detached," in relevant part, as: "[a] dwelling unit on a permanent foundation … designed and occupied as a residence for one (1) family . . . ." Reproduced Record (R.R.) at 173a.

In analyzing the use of the Cabin generally, the Trial Court noted that because the Trust was the owner, there was no permanent resident. As a result, it classified *all* users of the Cabin as tenants of the Trust, whether for profit, as with third parties, or for free, as with Trustee's family and friends. Building on these two classes of tenants, the Trial Court concluded, to the extent Trustee rented the Cabin to third parties, a profit motive underlay the use, which was inconsistent with the permitted use of a single-family dwelling. Thus, based on the composition of the group occupying the Cabin not qualifying as a "family," the Trial Court determined Trustee's use of the Cabin did not meet the Ordinance's definition of a "single[-]family detached dwelling." *Id.* Therefore, the Trial Court ruled in Neighbors' favor and granted their requested injunctive relief.[5]

Trustee then filed post-trial motions,[6] challenging the Trial Court's decision to the extent that it enjoined the rental of the Cabin based on the incongruity of short-term vacation rentals with the permitted single-family dwelling use.

The Trial Court reconsidered its decision in light of this Court's then recently published decision in *Shvekh*. There, we held that where a zoning ordinance did not prohibit use of single-family dwellings for short-term vacation rentals, the zoning hearing board erred in upholding an enforcement notice against the landowner. Relying on this Court's rationale in *Shvekh* and *Marchenko*, the Trial Court reached the opposite result, concluding the Ordinance did not prohibit short-term rentals as

---

[5] The Trial Court also determined Neighbors met the other two elements for injunctive relief under Section 617 of the MPC, in that they: (1) provided 30 days' advance written notice to the Township prior to instituting the enforcement action; and (2) established the Ordinance violation (*i.e.*, allowing short-term rentals) affected their enjoyment of their property.

[6] Though Trustee raised other issues in post-trial motions, they are not germane to this appeal.

5

incompatible with a single-family dwelling use. *See* Tr. Ct., Slip Op., 10/12/17 (Post-Trial Op.), R.R. at 142a-50a. Essentially, the Trial Court determined Trustee's short-term rental use was permissible under the Ordinance based on this Court's precedent at the time. As a result, it denied Neighbors' request for injunctive relief under Section 617 of the MPC, stating: "specifically, [Trustee] is not enjoined from allowing anyone to use the [Property] for short term rentals, whether paid or unpaid . . . ." R.R. at 141a. Neighbors subsequently appealed the Trial Court's order granting partial post-trial relief to Trustee to this Court.

## B. *Leinberger I*

In *Leinberger I*, this Court addressed whether the Trial Court erred in denying Neighbors' request to enjoin short-term rentals as inconsistent with use as a single-family dwelling under the Ordinance. Based on then-current precedent, including *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Board*, 164 A.3d 633 (Pa. Cmwlth. 2017) (*Slice of Life I*), in October 2018, this Court affirmed the Trial Court's order, thus allowing Trustee's short-term rental use. *Id.*

Critically, at that time, the Supreme Court undertook review of our decision in *Slice of Life I*. The Court granted review on the following question:

> Whether the Commonwealth Court disregarded the binding precedent of this Court, set forth in the case [of] *Albert* . . . by finding that the <u>purely transient use</u> of a property <u>as part of a commercial</u> short-term vacation rental <u>business</u> was a permitted use <u>in a residential zoning district</u>?

*Slice of Life II*, 207 A.3d at 896 (quoting February 21, 2018 Order Granting Appeal) (emphasis added). In 2017, this Court decided *Slice of Life I* based on our decisions in

6

*Shvekh* and *Marchenko* permitting short-term rentals of single-family dwellings. Pursuant to that precedent, *Leinberger I* held the Ordinance allowed Trustee's short-term rental use of the Cabin.

### C. Subsequent History

Neighbors petitioned the Supreme Court for review of *Leinberger I*, which the Court granted. In the interim, the Court decided *Slice of Life II*, reversing this Court's decision holding the short-term rental of a residentially zoned property was consistent with use as a single-family dwelling, thus calling into question the jurisprudence underlying *Leinberger I*. Then, the Supreme Court vacated the decision in *Leinberger I* and remanded the matter to this Court for further review. Following briefing and argument, we reexamine the matter under current law.

### III. Issue on Remand

In light of *Slice of Life II*, this Court reconsiders the Trial Court's order on post-trial motions that declined to enjoin Trustee's short-term rentals of the Cabin, thus deeming the short-term rental use consistent with single-family dwelling use permitted in the preservation zones under the Ordinance.

### IV. Discussion

Section 617 of the MPC provides a private enforcement mechanism to landowners to enjoin a use in violation of an ordinance. *See Smith v. Ivy Lee Real Estate, LLC*, 165 A.3d 93 (Pa. Cmwlth. 2017). Therefore, Neighbors are entitled to injunctive relief and reversal of the Trial Court's order only if they establish Trustee's short-term rental use of the Cabin in the AP zoning district violates the Ordinance.

On appeal from an order issued pursuant to Section 617 of the MPC, "[our review] . . . is severely restricted . . . . We will not reverse if apparently reasonable grounds exist for the relief ordered and no errors or inapplicable rules of law were relied on." *Siegmond v. Duschak*, 714 A.2d 489, 491 n.1 (Pa. Cmwlth. 1998) (noting deferential review to trial court when applying Section 617 of the MPC).

In their brief, Neighbors argue the holding of *Slice of Life II* compels reversal of the Trial Court's order granting post-trial relief to Trustee. They assert, under current precedent, Trustee's short-term rental use, with stays as short as a few days as found here, is inconsistent with use as a single-family dwelling. They maintain that the rental of the Cabin 30% of the time, and its potential availability for rent 90% of the time, shows a transient use. Neighbors contend the record does not support Trustee's assertion that friends or family used the Cabin 70% of the time.

Trustee counters that *Slice of Life II* does not prohibit short-term rental use in an area zoned for single-family dwelling use on a *per se* basis. Rather, the Court was limited to the question presented to it, which was predicated on the use of property as "purely transient" and as part of a commercial short-term rental business. Appellee's Br. at 4. Trustee emphasizes the distinguishing facts in the instant case. Although the Cabin is rented for approximately 30% of the year, Trustee does not operate a commercial business through which it rents other properties. Also, for a substantial portion of the year, Trustee's friends and family use the Cabin rent free. Because the use is not primarily commercial and *Slice of Life II* was based on the facts presented, Trustee asks this Court to uphold the Trial Court's ruling in his favor.

8

**A.** *Slice of Life II*

In April 2019, our Supreme Court reversed this Court's 2017 decision in *Slice of Life I*, and thus called into question our case law deeming short-term rental use consistent with residential single-family dwelling use. *See Slice of Life II* (holding corporate owner's web-based rental of single-family dwelling was not permitted use in residential district; overruling *Shvekh* and *Marchenko*). There, corporate owner Slice of Life (SoL) used and marketed its six-bedroom dwelling as an investment property engaged in tourism in the Pocono Mountains. Ownership by SoL was completely separate from occupancy or use of the dwelling.

The Supreme Court's decision was bound by the facts set forth in the question on which the Court granted appeal. These predicate facts were: "purely transient use"; "as part of a commercial short-term vacation rental business"; and located "in a residential zoning district." *See* Order Granting Appeal.

Additionally, the Court was bound by the findings of the zoning board. The zoning board concluded SoL's short-term rental use was *inconsistent* with the ordinance. *Slice of Life II*. Specifically, it determined the "short[-]term transient lodging rental business and use of the [property] is the <u>operation of a business in the Single[-] Family Residential District</u> contrary to the provisions of the [o]rdinance resulting in a purely transitory occupancy of the [property]." *Id.* at 894 (emphasis added). The zoning board also found the dwelling was owned by a non-resident corporation.

In determining short-term rentals of property used on a purely transient basis as a commercial business was inconsistent with single-family dwelling use, the

9

Court started with the relevant ordinance. It noted the ordinance defined "family" narrowly as occupants of a dwelling, "related by blood, marriage, or adoption, living together as a single housekeeping unit." *Id.* at 892 (emphasis added). It reasoned a single housekeeping unit may be established when occupants of a home "lived and cooked together[,] . . . attended social and religious functions together and celebrated holidays jointly . . . and the activities of the home were shared in by all occupants . . . ." *Id.* at 890. In that regard, the Court noted that "neither [the property manager] nor [SoL] is aware of (or makes any effort to ascertain) the relationship, if any between the individuals occupying the [p]roperty at any given time . . . [and] collects no information regarding the [occupants]." *Id.* at 893. Thus, there was *no evidence that occupants functioned as a single housekeeping unit*. Indeed, the Court pointed out that sometimes more than one group or family rented the dwelling at the same time because it could accommodate 17 people.

Building on its decisions in *Albert* and *Miller*, the Court emphasized the importance of permanent residency in a residential zoning district. It explained "the composition of the group must be sufficiently stable and permanent so as not to be fairly characterized as purely transient." *Id.* at 891. While the Court did not define "purely transient," it described the phrase in terms of duration of stay/resident turnover. In its analysis, the Court compared the duration of residence by group home members in *Miller* with that of recovering addicts in a halfway house in *Albert*. It deemed the residence in *Miller* stable, as one member lived in the group home for eight years, whereas the residence in *Albert* was transient because there was consistent turnover of program participants, who lived in the recovery house only temporarily, with two- to six-month stays.

10

In holding that "purely transient" residence is incompatible with the definition of family, the Court relied on its decision in *Albert*, which involved the operation of a recovery house in a residential district. Applying *Albert* to SoL, the Court reasoned a residence designed for use on a temporary basis, such that there was regular turnover of occupants, was inconsistent with the inherent stability of a single-family dwelling use in a residential zone. *Slice of Life II*.

In *Slice of Life II*, ultimately, the Supreme Court did not impose an absolute prohibition on a short-term rental use in a single-family dwelling. Rather, the Court's decision reflects the importance the Court places on certain concepts for discerning the quintessential characteristics of a "Single-Family Residential use." *Id.* at 898. The Court reviewed the relevant definitions of family, dwelling and one-family dwelling in the *Slice of Life* ordinance, which required occupation of the dwelling as a residence for one family exclusively, and specifically "[did] not include a hotel, motel, rooming houses or other tourist home." *Id.* at 899. Thus, its holding was compelled by the predicate facts and those found by the fact-finder, and the language of the zoning ordinance as applied to those facts.

Significantly, *Slice of Life II* did not alter a fundamental precept of zoning jurisprudence that the language of the ordinance crafted by the locality governs. The Court emphasized that zoning is a valid exercise of police power, insulating areas intended for residential living. It is in that context of a residential zoning district that the Supreme Court held that the exclusively for-profit use of the dwelling in *Slice of Life II* was incompatible with single-family dwelling use.

11

**B. Analysis**

Zoning is inherently local, involving a multiplicity of factors affecting the permissible uses of property. *See Rice Family Tr. v. City of St. Marys*, 51 A.3d 913 (Pa. Cmwlth. 2012) (noting stated purpose of a particular zoning district is a significant factor in analyzing use under ordinance). In reviewing the permissibility of uses, we consider the purpose of particular districts and local concerns:

> Zoning accounts for the "natural, scenic, historic and esthetic values of the environment" . . . by placing compatible uses in the same zoning district; by establishing minimum lot sizes and dimensional requirements; providing parking and signage controls; and requiring landscape and screening controls. This list goes on. It is axiomatic that a zoning ordinance must balance the public interests of the community with the due process rights of private property owners.

*Frederick v. Allegheny Twp. Zoning Hr'g Bd.*, 196 A.3d 677, 695 (Pa. Cmwlth. 2018) (*en banc*) (citation omitted). Here, the issue is whether Trustee's short-term rental of the Cabin is a permissible use of a single-family dwelling in the AP zone.

The issue of whether a proposed use "falls within a given category [of use] specified in a zoning ordinance is a question of law." *Southco, Inc. v. Concord Twp.*, 713 A.2d 607, 609 (Pa. 1998). As such, appellate review is limited to whether the lower court committed legal error. *Id*. "We are bound by the facts as found by the [fact-finder] that are supported by substantial evidence, which [is] defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Slice of Life II*, 207 A.3d at 898-99 (citation omitted).

12

Traditional principles for construing a zoning ordinance apply. An ordinance is construed pursuant to the principles in the Statutory Construction Act of 1972, 1 Pa. C.S. §§1501-1991. Terms that are not defined in the ordinance must be construed in accordance with their plain language. *See* 1 Pa. C.S. §1903(a).

Further, "zoning ordinances are to be liberally construed to allow the broadest possible use of land." *Ligo v. Slippery Rock Twp*., 936 A.2d 1236, 1238 (Pa. Cmwlth. 2007). The "language of a zoning ordinance should be interpreted in favor of the landowner and against any implied extension of restrictions on the use of one's property." *Adams Outdoor Advert., LP. v. Zoning Hr'g Bd. of Smithfield Twp*., 909 A.2d 469, 484 (Pa. Cmwlth. 2006); *see also* Section 603.1 of the MPC, 53 P.S. §10603.1[7] (stating restrictions on use of property "shall be [so] interpreted, where doubt exists as to [its] intended meaning . . . ").

### 1. Compatibility of Use with Ordinance

The above principles guide our analysis of the Ordinance. It defines the pertinent terms as follows: "**Dwelling unit**" - "Any structure or part thereof, <u>designed to be occupied as</u> living quarters as a single housekeeping unit" (§925); "**Dwelling unit; single[-]family detached**" - "<u>A dwelling unit</u> on a permanent foundation . . . <u>designed and occupied</u>[8] <u>as a residence</u> for one (1) family . . . "

---

[7] Section 603.1 was added by the Act of December 21, 1988, P.L. 1329.

[8] In its Original and Post-Trial Opinions, the Trial Court misquotes Section 925.3 of the Ordinance, where it defines "Dwelling unit – single[-]family detached" in that it substituted the word "constructed" for "occupied." *See* Original Op. at 22, Finding of Fact No. 9; Post-Trial Op. at 8. The parties did not note the discrepancy because the word "occupied" was not the focus of Neighbors' private action. Nonetheless, it is clear the Trial Court considered the term "occupied" which is contained and accurately quoted in the umbrella definition of "Dwelling unit" in Section

13

(§925.3); and "**family**" - "one or more individuals living independently as a single housekeeping unit and using cooking facilities and certain rooms in common . . . ." (§926). Ordinance, §§925, 925.3, and 926 (emphasis added); R.R. at 172a-73a.

Based on the language of the Ordinance, we agree with the Trial Court that the short-term rental use of the Cabin conforms to these definitions. The Cabin qualifies as a "dwelling unit" under the plain language of the definition, and neither party disputes that the Cabin was designed and occupied as a single-family dwelling. *Slice of Life II* does not compel a different result on remand because that case was factually and procedurally distinguishable and involved a materially different zoning ordinance.

### a. Legal Distinctions – Ordinances Compared

First, the Ordinance is clearly distinguishable from that in *Slice of Life*. There, the definition of family was limited to a familial relationship, by blood, adoption or marriage. Also, dwelling was defined in terms of residential use as "a building or structure to be used as 'living quarters for one or more families,'" but does *not* include "hotel, motel, rooming houses or other tourist home." *Id.* at 899. The ordinance also defined "one-family dwelling" as "a building on a lot designed, arranged or intended for **and** <u>occupied exclusively</u> as a residence <u>for one family</u>." *Id.* at 892 (emphasis added).

---

925. As the definition of single-family detached is a subset of "Dwelling unit," and there is no contention that the substitution affected the analysis or result in this case, we do not deem the oversight material.

14

Significantly, the Ordinance does not mandate the use, residence or occupation of a "dwelling unit" solely by one family in its definition. By contrast, the *Slice of Life* ordinance required occupation of the single-family dwelling by one qualifying family "exclusively." *Id.* As such, the definition contemplated and rejected use of a single-family dwelling by more than one family. The "single-family detached" definition in Section 925.3 of the Ordinance includes the terms "designed and occupied as a residence," there is no qualifier for *exclusive* occupation by one family. Also unlike *Slice of Life*, the Ordinance did not exclude from the definition of dwelling a hotel, motel, rooming house or tourist home, which terms implicate rentals to tourists, thus, barring such use in a dwelling. Here, the Ordinance does not prohibit short-term rentals of a single-family dwelling.

In addition to the material distinctions in the ordinance definitions, the type of zoning district and the character of the zone where the use occurred differs. SoL's property was located in Zoning District A, which provided for use class 1 – single-family residential. Trustee uses the Cabin for periodic short-term rentals in a preservation zone, not a residential zone. The intent of the preservation zones is land preservation and reduced development. *See* Ordinance, §341. This starkly contrasts with the purpose of residential community at the heart of residential zones.[9]

Second, and importantly, the rationale of the Court in *Slice of Life II* focused on the compatibility of short-term rental use in a ***residential zoning district***. It connected the need for permanence and stability to the type of district, stating that

_____

[9] The Township also includes a "Rural Residential" district, the purpose of which is "to permit the orderly development of residential neighborhoods of single[-]family detached and cluster housing at a density equal to the Rural District, or a slightly greater density where public sewer is available, as well as agriculture related operations and businesses." Ordinance, §391.

15

upholding the zoning board was "entirely consistent with the long-recognized goals of creating a residential zoning district." *Id.* at 899; *see Albert*, 864 A.2d at 409 (explaining single-family *zoning districts* "create residential neighborhoods in which the residents may develop a sense of community and a shared commitment to the common good of that community"). From that foundation, it reasoned:

> Non-family uses, including fraternity houses and boarding houses, have been found to be antithetical to the "residential character," as "[m]ore people occupy a given space; more cars . . . continuously pass by; more cars are parked; [and] noise travels with crowds." . . . A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one . . . . The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

*Slice of Life II*, 207 A.3d at 889 (emphasis added) (quoting *Vill. of Bell Terre v. Boraas*, 416 U.S. 1, 9 (1974) (citations omitted)).

This rationale precluding short-term rentals in a residential zone based on homeowners' rights to community and quiet enjoyment of their property is ill-suited to a cabin located on a 48-acre tract in an AP zone.[10] In this zoning context, the need for retaining the essential character of a single-family residential zone is lacking.

---

[10] As to a right to quiet enjoyment of their homes, the Trial Court ruled in Neighbors' favor on the public nuisance claim and imposed limitations on the use of the Property to preclude those that posed a nuisance. The disposition of that claim remains undisturbed.

Further, the procedural posture of this case is unique. Unlike *Slice of Life II*, the instant case did not arise from a landowner's challenge to a zoning enforcement notice whereby the zoning officer made a determination that the challenged use was inconsistent with the ordinance. *See, e.g.*, *Slice of Life I*; *Shvekh*; *Marchenko*.[11] There was no such determination here. Rather, Neighbors notified the Township of their intention to bring a private enforcement action under the MPC to enjoin Trustee's short-term rental use, and proceeded with their claim despite the locality's determination that the use challenged did not violate the Ordinance. *See* R.R. at 79a-80a (Zoning Officer Letter); 576a-79a (Testimony of Zoning Officer).

In this alternate procedure, the Township zoning board did not render findings or conclude the short-term rentals violated the Ordinance. To the contrary, here, the Township zoning officer declined to find the short-term rentals of the Cabin constituted a violation, despite Neighbors' complaints. *See* R.R. at 79a-80a. In fact, following an investigation, he concluded that "the [P]roperty and activities at 7963 Springhouse Road are in compliance with the [Ordinance]." R.R. at 79a. He advised that under the Ordinance, "[t]here is no prohibition on renting residential property in either the AP or the BM zoning district. Therefore, the rental of the [P]roperty, as a ***residential use***, does not violate any [Ordinance] provision." *Id.* (emphasis added).

Additionally, after voir dire, the Trial Court accepted the Township zoning officer as an expert able to opine regarding compliance with the Ordinance. R.R. at 559a. The zoning officer was aware of the weekend rentals of the Cabin when he determined the short-term rentals did not violate the Ordinance. R.R. at

---

[11] In all three cases, this Court reversed the county courts of common pleas that upheld the zoning hearing boards' determinations deeming such use inconsistent with the governing ordinances.

579a.  Thus, the record contains *expert* testimony that the short-term rentals were consistent with use as a single-family detached dwelling.  R.R. at 576a-80a.

Further, it bears emphasis that because Neighbors filed suit under Section 617 of the MPC, *Neighbors* bore the burden of proving a violation of the Ordinance.  *Siegmond.*  Trustee bore no burden to show compliance.  In addition, Neighbors set forth the purported Ordinance violation in their pleading, thus defining the scope of the violation.[12]  Here, that was limited to whether the occupants of the Cabin who used it on a short-term basis, whether for free (Trustee friends/family) or for rent (third parties), qualified as a "family" under the definition in Section 926.

Mindful of the context of the zoning district and a locality's prerogative to create and enforce its zoning plan,[13] this Court agrees with the Trial Court and the zoning officer that Trustee's short-term rentals of the Cabin, located on 48 acres in a preservation zone, do not constitute a violation of the Ordinance's intent or its terms.

---

[12] At no point in this five-plus year litigation did Neighbors challenge any component of the single-family detached dwelling unit definition other than that as "residence by one (1) family," focusing on the term "Family."  Neighbors did not notice the Trial Court substituted the word "constructed" for "occupied" in the definition indicating it was not material to their allegations.  Had Neighbors drawn this Court's attention to the difference, we may have noted it in *Leinberger I*, but they did not.  Regardless, because Neighbors did not argue that point in their briefs on post-trial motions, the issue as to the meaning of "occupied" in "Dwelling unit – single[-]family detached" (to the extent one exists) was not part of their MPC challenge.  *Siegmond v. Duschak*, 714 A.2d 489 (Pa. Cmwlth. 1998) (holding issue not briefed in post-trial motions was waived).

[13] Our Supreme Court acknowledged "the prevalence of short-term rentals in Pennsylvania . . . requir[es] cities, townships and boroughs to make case-by-case determinations of whether and where such rentals should be permitted."  *Slice of Life II*, 207 A.3d at 897.  The Court thus recognized the permissibility of short-term rentals is a highly fact-intensive inquiry appropriate for determination by the locality.

18

## b. Factual Distinctions

Also, based on the found facts, this case is factually distinguishable from *Slice of Life II*. The holding in *Slice of Life II* applies as a matter of law to "exclusive use of the [p]roperty as a short-term rental." *Id.* at 898. However, the instant case does not patently involve such exclusive use for a singular for-profit purpose. In fact, both parties represent use by Trustee's friends and family as a percentage of the total use over a year, disagreeing only about the percentage of that use.[14] Indeed, the Trial Court found Trustee's family used the Cabin a substantial portion of the time. *See* Original Op. at 21; R.R. at 475a-76a. Also, Trustee rented the *entire dwelling* for use by a single housekeeping unit. *See* R.R. at 177a-201a (Chart).

Turning to the analysis of "family," the Trial Court found: "The individuals who stay at the [Property] meet the definition of 'family' set forth in Section 926 of the Ordinance." Post-Trial Op. at 9; *see also* Original Op. at 15 ("the people who use the [Property] meet the definition of 'family' under the Ordinance"). Notably, the Trial Court ruled "[t]he evidence demonstrates that, whether the people using it are the family and friends of [Trustee], or are strangers that pay rent, the [Property] is used by individuals who live independently as a single housekeeping unit and use cooking facilities and certain rooms in common." Original Op. at 15. In so concluding, the Trial Court recognized the "broad definition of 'family'" under the Ordinance. *See* Post-Tr. Op. at 8.

---

[14] *Compare* Appellants' Reply Br. at 3 (Trustee's use is only 10% of the year when reserved, and available for rent 90% of the year) *with* Appellee's Br. at 4 ("The Property in question is used by the Stellar family approximately 70% of the time.").

19

The Trial Court's legal analysis is also sound. As to owner use, it noted: "The fact that the owner of the [Property] never lives on the [Property], since the owner is a trust rather than an individual, is an important factor but is not the controlling factor." Post-Trial Op. at 8. It also recognized the Ordinance did not prohibit rental of single-family dwellings or short-term rentals generally. *See id.* at 9. Thus, its ruling was consistent with the principle that an ordinance shall be construed to permit the least restrictive use of land. *See Adams Outdoor Advert.*

We discern no violation of the Ordinance under these facts.[15] The Cabin meets the definition of a "single[-]family detached dwelling," a permitted use in a preservation zoning district. Because the Trial Court found the use of the Cabin was by one single housekeeping unit at a time, and consistent with its design and occupation as a single-family dwelling, the short-term rentals of the Cabin do not violate the Ordinance.

To the extent Neighbors argue the record does not support the use by Trustee's family and friends for a substantial portion of time, our careful review of the record shows the Trial Court's finding in this regard is supported. Testimony by Trustee and his witnesses reflects that Trustee's family regularly used the Cabin when it was not rented. R.R. at 468a-69a, 490a-92a, 514a ("hunting season, I live there . . . it's our home away from home"). The record, including exhibits containing details on the renters, shows the Cabin was rented about one third of the year over a six-year period. *See* R.R. at 475a-76a, 484a-86a; Original Record, Item No. 40 (Ex. 9).

---

[15] We do not suggest the facts must be identical to those in *Slice of Life II* for a short-term rental use to be incompatible with single-family dwelling use; indeed, such use, when inconsistent with a zoning plan, may be precluded even when an ordinance is silent as to short-term rentals.

Also, as to local enforcement of the Ordinance, the record is clear that the Township permits other short-term rentals of single-family dwelling units. The Trial Court admitted testimony over Neighbors' relevance objection that, at the time, at least four other single-family dwellings were used for short-term rentals. *See* R.R. at 470a-71a. Neighbors simply did not substantiate that short-term rental of a "Dwelling unit – single[-]family detached" violates the Ordinance.

Under our highly deferential review of the order, when the Trial Court served as the fact-finder under Section 617 of the MPC, and the record supports its findings that the occupants of the Cabin qualified as a "Family," we discern no error.

**V. Conclusion**

In sum, *Slice of Life II* offers no cause to alter our initial disposition affirming the Trial Court's order in Trustee's favor. *Slice of Life II* reflects that the zoning context remains critical, as is a locality's determination of whether such use constitutes a violation. Aside from the material differences in facts and ordinance language, the rationale in *Slice of Life II* is inseparable from the zoning context, *i.e.*, location of short-term rental use in a residential zone where retaining the residential character of a community is key. Applying the lessons from *Slice of Life II* to these circumstances, and based on our legal analysis of the Ordinance, we affirm the Trial Court's order determining that Trustee's short-term rental use of the Cabin did not constitute a violation of the Ordinance to afford injunctive relief under the MPC.

_____
J. ANDREW CROMPTON, Judge

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cheri Ann Leinberger, Matthew S.     :
Leinberger,Daniel P. Seneca,        :
Kathleen A. Seneca and           :
William J. Necker,              :
              Appellants   :
                       :
        v.            :   No. 1620 C.D. 2017
                       :
Anthony G. Stellar, as Trustee     :
of the Deborah E. Stellar         :
Revocable Trust               :

# **O R D E R**

**AND NOW**, this 25th day of September 2020, the order of the Lehigh County Court of Common Pleas is AFFIRMED.

_____
J. ANDREW CROMPTON, Judge